## Stroudsburg Security Trust Company Case.

Argued March 6, 1941.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, RHODES and HIRT, JJ.

46

*James C. Scanlon,* with him *Forrest J. Mervine,* for appellant.

*Harold C. Edwards,* with him *Fred W. Davis,* for appellee.

OPINION BY HIRT, J., June 30, 1941:

This appeal questions the title of East Stroudsburg National Bank to bonds of Penn Hills of a total par value of $11,500 pledged by the treasurer of that company as collateral security for his personal loan without authority from the corporation.

Fred H. Detrick and L. D. Sopher were promoters of Penn Hills, a business venture incorporated in 1929; throughout the period with which we are concerned the former was the president and the latter the treasurer of the corporation. On July 15, 1929 the corporation gave a mortgage of its property to Security Trust Company, (by merger now Stroudsburg Security Trust Company) trustee, as security for an issue of $35,000 negotiable coupon bonds payable to bearer. The bonds after certification were delivered to the company's treasurer as custodian, pending sale. Bonds of a total of $10,000 were sold by the corporation to appellant and other purchasers; $13,500 in bonds were pledged by the corporation as security for a corporate debt. The remainder of the issue aggregating $11,500 are the bonds in question.

Prior to the incorporation of the company, Detrick

and Sopher were indebted to Security Trust Company on obligations amounting to $11,000. On May 22, 1930 this indebtedness was reduced to $5,500 by payment and new obligations were entered into by Detrick and Sopher for that amount. As an accommodation to them Penn Hills corporation by action of its board authorized the delivery of $11,500 in bonds to the Trust Company to be pledged as security for the debt of $5,500, the personal obligation of its officers, though there is some evidence that the corporation had benefited by the loan. On October 17, 1931 these officers repaid the Trust Company in full and the bonds were then returned to the custody of Sopher. On that date the liability of Sopher to East Stroudsburg National Bank either directly or as indorser amounted to about $16,800 and judgment had been entered of record against him in favor of the bank on all of his obligations. About that time he had negotiated the sale of certain lands owned by him personally, and to make good title it was necessary that the lands be released from the lien of those judgments. As consideration for the releases Sopher delivered to the bank, wholly without authority of Penn Hills corporation, the $11,500 in bonds, which had just been returned to him as treasurer. The corporation was not indebted to East Stroudsburg National Bank and these bonds were pledged by Sopher and accepted by the bank as security for his personal obligations and for no other purpose. On Sopher's default on his notes, the bank sold the collateral at public sale and bid in the bonds in question. The auditor, appointed to make distribution of the fund in the hands of the trustee for the bondholders, recognized the bank as a bona fide holder of the bonds and awarded to it a share of the fund on a parity with other holders who had bought bonds from the corporation. The final order confirming the auditor's report and directing distribution is the error assigned. By stipulation, this appeal by one purchaser of bonds, will inure to the benefit of all others in the same class.

48

The bonds were negotiable; East Stroudsburg National Bank took them for value in releasing liens on Sopher's real estate and the bank must be regarded a holder in due course if, but only if, the circumstances under which Sopher negotiated the bonds, did not put the bank upon notice that he was not the owner, or upon inquiry which would have led to knowledge of that fact. Negotiable Instruments Act of May 16, 1901, P. L. 194, §52, 56 PS §132. If the facts within the knowledge of the bank charge it with bad faith, the bank is not a holder in due course, §56, 56 PS §136, but in law must be regarded as a party to the fraud.

Under §56, mere suspicion or knowledge of facts sufficient to put a prudent man on inquiry without actual knowledge does not prevent a transferee from becoming a bona fide holder, unless the failure to inquire amounts to bad faith. Suspicious circumstances are not enough unless bad faith reasonably can be inferred from them. *Lancaster Co. Nat. Bank v. Garber,* 178 Pa. 91, 35 A. 848. "But no usage, however common and well recognized, can be invoked to justify a banker or anyone else in taking money or negotiable paper in payment of an agent's debt, known to belong to his principal, or known to belong to a trust estate, to satisfy the trustee's personal debt, or to shield the banker from accountability who wilfully closes his eyes and stops his ears to facts and circumstances which import notice that the agent or trustee is misappropriating the money or property entrusted to him": *N.- P. Trust Co. v. Middleton et al.,* 300 Pa. 522, 150 A. 885; *Pa. Co. for Ins. et al. v. Ninth Bk. & T. Co.,* 306 Pa. 148, 158 A. 251; *Schmitt v. Potter T. & Tr. Co.,* 61 Pa. Superior Ct. 301. Negotiable paper so wrongfully received may be recovered. *Garrard v. Pittsburgh & Connellsville R. R. Co.,* 29 Pa. 154. He who seeks protection as a holder in due course must have dealt fairly and honestly in acquiring the instrument, as to the rights of prior parties *(Fehr v. Campbell,* 288 Pa. 549, 137 A. 113) and "where circumstances

are such as to justify the conclusion that the failure to make inquiry arose from a suspicion that inquiry would disclose a vice or defect in the title, the pledgee is charged": *Fidelity Nat. Bank & Trust Co. v. Southern United Ice Co.,* 78 F. 2d 438.

The following from the opinion in *Fehr v. Campbell,* supra, is a discussion of these controlling principles as applied to this appeal. "Prima facie, an officer of a corporation has no authority to use its funds or securities to pay his private obligations or as collateral for his personal loans; and it is well settled that one who takes *negotiable paper which appears to be,* or which the taker knows to be, *the property of a corporation,* for the purpose of applying such paper to the personal use of one of the officers of such corporation, or of a third party, is bound to inquire as to the authority of the officers to make such use of the paper; and if no inquiry be made, the taker is held as though he had knowledge of all that inquiry would have revealed; finally, if it is not affirmatively shown that inquiry would have revealed facts sufficient to overcome the prima facie misappropriation, the presumption of bad faith remains." (Italics added.)

Sopher was the duly designated custodian of the corporation's unissued bonds. As such he held the bonds in question until pledged with Security Trust Company by the corporation and when, on termination of that pledge, the bonds were returned to him, in legal effect they were returned to the corporation. Sopher's subsequent act, therefore, in pledging them with the East Stroudsburg Bank for his personal account, without authority, amounted to a conversion of the bonds by him and when that fact was shown in the proceedings before the auditor, the burden then shifted to the bank to prove that it was a holder in due course, (Negotiable Instruments Law, §59, 56 PS §139) without notice of Sopher's lack of title. *Second Nat. Bank v. Hoffman,* 229 Pa. 429, 78 A. 1002. The presumption is that the

purchaser or pledgee of negotiable bonds is a holder in due course but when fraud is shown in the inception of the bonds invalidating the title of the seller or pledger, the burden is cast upon the holder, to entitle him to protection as a bona fide holder, to show that he is such. *Title Guaranty Co. v. Barone*, 319 Pa. 499, 181 A. 765; *First Natl. Bank of N. J. v. Cattie Bros.*, 285 Pa. 202, 131 A. 731.

The broad question here involved, therefore, is whether that burden has been met. No evidence appears other than the circumstances under which the bank took the bonds and these we think charge it with bad faith as a matter of law. Though proof of bad faith must appear, it may be established by circumstantial evidence. *Union Bank and Tr. Co. v. Girard Tr. Co.*, 307 Pa. 488, 161 A. 865. The hearsay testimony that Sopher told the bank that the bonds were his, has no probative force, for inquiry of an officer of a corporation as to his authority is not sufficient. *Germania Safety-Vault & Trust Co. v. Boynton*, 71 F. 797.

The weight of authority clearly supports the view that a case of this nature is governed by its peculiar facts. 31 A. L. R. (N. S.) 169; Fletcher on Corporations, §2714. And in the light of the evidence in this case, when the bank accepted the bonds of the corporation from its treasurer as a pledge for his individual debt it was in no better position than if it had taken the corporation's note for that purpose, without inquiry, and therefore was not a bona fide holder. *Germania Safety-Vault & Trust Co. v. Boynton*, supra. A note and a bond of a corporation are both promises to pay. The bank had notice in the bonds themselves, from a facsimile of Sopher's signature on the coupons, that he was the corporation's treasurer; moreover, actual knowledge of that fact is conceded. The circumstances must have raised a grave suspicion that the bonds were not owned by Sopher thus imposing the duty of inquiry upon the bank. Sopher was indebted to the bank at the time of

their issue in a large amount and the bank knew of his substantial indebtedness to the Security Trust Company. Assuming that Sopher may have had resources which would have enabled him to buy $11,500 in bonds, the fact that the bonds presented had four unpaid past due coupons attached to them was significant. The corporation was then solvent and one, as heavily involved financially as the bank knew Sopher to be, certainly would not have neglected to collect the substantial sum of $1,380, the then value of the past due coupons and to that extent relieve himself of the burden of his indebtedness. Under all the circumstances, when this treasurer offered corporate bonds as security for his personal debt the bank had notice that inquiry as to his title was necessary and its failure in that respect is such negligence as charges it with knowledge of all the facts which inquiry would have disclosed. Having taken corporate bonds from an officer of the corporation to secure his private indebtedness, this bank, under the evidence, was bound to ascertain his right to dispose of the bonds. *Germania Safety-Vault & Trust Co. v. Boynton,* supra. That the bank knew of a prior pledge of the bonds with Security Trust Company is unimportant. Inquiry would have developed the fact that the corporation in that instance had authorized the pledge of the bonds; estoppel is not involved. We are of the opinion that the bank has not met the burden upon it of proving that it was a bona fide holder.

Judgment reversed and distribution is directed in accordance with this opinion and the stipulation.