Gimbel Brothers, Inc., *v.* Hymowitz, Appellant.

Argued October 7, 1946. Before BALDRIGE, P. J., RENO, DITHRICH, ROSS and ARNOLD, JJ. (RHODES and HIRT, JJ., absent).

*Daniel Marcu,* for appellant.

*Samuel Englander,* for appellee.

OPINION BY ARNOLD, J., March 4, 1947:

Gimbel Brothers, Inc., claiming to be a bona fide holder for value of a dishonored check drawn by Bruce K. Redding, a contractor, sued Hymowitz, the payee and

prior indorser. The defense was that Redding, the drawer, came to defendant's plumbing supply store and discussed with the salesman the purchase of certain supplies, and gave therefor his check for $500, naming Hymowitz as payee. The check was brought to Hymowitz, who indorsed it (an open indorsement). Redding asked for immediate delivery of the goods and the defendant then telephoned from his private office to the drawee bank and learned that the check was not good. Hymowitz returned and found that Redding had left and taken the check with him. Redding indorsed the check bearing the prior indorsement of the payee and took it to Gimbel Brothers, Inc., where he had credit and whose branch credit manager he knew. He was accompanied by a person whom Redding introduced as Hymowitz, the payee, and the plaintiff cashed the check. We have, therefore, a holder of a check suing a prior indorser. In a trial before the court without a jury judgment was for the plaintiff, the holder, against the defendant, the indorser-payee, and the defendant appealed. The question thus involved is apparently an open one in Pennsylvania.

The judgment will be affirmed for two reasons.

A holder in due course is defined by §52 [1] of the Negotiable Instruments Law of 1901, P. L. 194, 56 P.S. 132, as one who takes an instrument, complete and regular on its face, in good faith and for value. The plaintiff was a holder in due course. It gave for the check the full amount for which it was drawn. It did

---

[1] "A holder in due course is a holder who has taken the instrument under the following conditions:

"1. That it is complete and regular upon its face.

"2. That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact.

"3. That he took it in good faith and for value.

"4. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it." (56 P.S. 132)

not take it at a discount as in *Fehr v. Campbell,* 288 Pa. 549, 137 A. 113, where only $6000 was given for a $10,000 note. The purchasing of an article at a price considerably less than its value is evidence of bad faith, as in prosecutions for receiving goods known to be stolen, *Commonwealth v. Frankina,* 156 Pa. Superior Ct. 152, 39 A. 2d 628, and many other cases. While in the *Fehr* case the Supreme Court held that the decisional law before the statute required that the holder, to be protected, must have taken the instrument "in the regular course of business", and that this rule must be read with the act, yet in that case the term, "regular course of business" was defined to be a transaction as to which none of the circumstances would lead to suspicion of the integrity of the paper. See also *Davis, Trustee, v. Pennsylvania Company, etc.,* 337 Pa. 456, 460, 12 A. 2d 66; *Union Bank & Trust Co., to use, v. Girard Trust Co.,* 307 Pa. 488, 500, 161 A. 865; and *First National Bank of Blairstown v. Goldberg et al.,* 340 Pa. 337, 17 A. 2d 377. In the instant case no circumstances existed which would lead to suspicion. The person paid was identified by the maker himself as the payee, and the full amount of the check was given. The fact that the check bore a notice that it was given for plumbing supplies for two certain contracts or buildings could not be suspicious, for the payee was in that business.

The defendant-indorser could not defend on the ground of his own non-delivery. For under §16 [2] of

---

[2] "Every contract on a negotiable instrument is incomplete and revocable until delivery of the instrument for the purpose of giving effect thereto. As between immediate parties, and as regards a remote party other than a holder in due course, the delivery, in order to be effectual, must be made either by or under the authority of the party making, drawing, accepting or indorsing, as the case may be; and in such case the delivery may be shown to have been conditional, or for a special purpose only, and not for the purpose of transferring the property in the instrument. But where the instrument is in the hands of a holder in due course, a valid delivery thereof by all parties prior to him, so as to make them liable to him, is conclusively pre-

N. I. L., 56 P.S. 21, as to a holder in due course delivery by all prior parties is *conclusively* presumed. Having taken the check without notice of any infirmity under §56 [3] of N. I. L., 56 P.S. 136, the holder's title was not defective under §§54 [4] and 55, [5] 56 P.S. 134 and 135.

The other reason which precludes the prior indorser from defending on the ground of non-delivery is the maxim that as between two innocent parties (in this case the holder for value and the prior indorser) liability should be borne by the one, i. e., the indorser, who made the loss possible.

The payee and prior indorser could easily have protected himself by making his indorsement "for deposit only" or with some similar notation. He could have protected himself by not allowing the indorsed check to go out of his possession. He could have protected himself by not indorsing the check until he was ready to receive it. Thus his act or acts enabled Redding to commit the fraud and induced the payment by the plaintiff of the check. To hold otherwise would require one proposing to become the purchaser of a check to inquire of each

sumed. And where the instrument is no longer in the possession of a party whose signature appears thereon, a valid and intentional delivery by him is presumed until the contrary is proved." (56 P.S. 21).

[3] "To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith." (56 P.S. 136).

[4] "Where the transferee receives notice of any infirmity in the instrument, or defect in the title of the person negotiating the same, before he has paid the full amount agreed to be paid therefor, he will be deemed a holder in due course only to the extent of the amount theretofore paid by him." (56 P.S. 134).

[5] "The title of a person who negotiates an instrument is defective, within the meaning of this act, when he obtained the instrument or any signature thereto by fraud, duress or force, and fear, or other unlawful means, or for an illegal consideration, or when he negotiates it in breach of faith or under such circumstances as amount to a fraud." (56 P.S. 135).

indorser whether his indorsement was intended, or in default thereof to release him. This rule is fully discussed in *Weiner v. The Pennsylvania Company, etc.,* 160 Pa. Superior Ct. 320, where it was applied to place the loss on the maker of a check who signed it in blank, as between the maker and the drawee bank.

Judgment affirmed.