Opinion by
Wood side, J.,
This is an appeal from a decree of the County Court of Philadelphia sitting in equity. The court declared null and void a judgment held by Peoples National Fund, Inc. against the plaintiffs, rescinded a purchase agreement for a breakfront and directed the plaintiffs to return the breakfront (for the purchase price of which the judgment was obtained) to State Wide or World Wide Distributors, Inc. Peoples National Fund, Inc. appealed.
This, and a companion case, grew out of transactions which the court below aptly characterized as “reeking with malodorous fraud.”
Maneen, agent of defendant World Wide Distributors, Inc., called upon the plaintiffs about January 23, 1961, and outlined to them “a program for direct advertising.” He represented to them that if they purchased a breakfront, he would pay them $5 for each letter they wrote to a friend requesting an appointment for World Wide’s agent to explain the details of a sound advertising program and $20 for each sale made to any such person. Their friends whose names they furnished were to be given the same opportunity to profit from supplying names of their friends. He said the plaintiffs would realize sufficient money to pay for the breakfront and to enable them to send their laughter to college. He persuaded the plaintiffs to sign, without reading, a purchase agreement, an attached judgment note in blank and an “Owner’s Participation Certificate.” The plaintiffs were given forms by World Wide of letters to be sent to their friends and they prepared 60 of them for mailing, but *56 received only $80. When asked for the balance dne them under the contract they were told that the bookkeeper was ill, that the matter would be taken up, that the check was on the desk awaiting the treasurer’s signature, and similar excuses. Under the terms of the purchase agreement, the plaintiffs agreed to “sign the attached note providing for 30 monthly installments of $35.98 or a total of $1,079.40.” (It was alleged that the fair retail price of the breakfront was less than one-fifth this amount.) The first payment was to be made in 45 days.
After the note was signed and taken from the home of the plaintiffs it was filled in for $1,079.40 and made payable 3 days after date “to H. Waldman T/A State Wide Products at the office of Peoples National Fund.” The note for $1,079.40, with interest, was purchased by Peoples National Fund, Inc. on January 25, 1961, for $831 and judgment was entered thereon February 7, 1961. It is hardly necessary to add that World Wide is now nowhere to be found. Within approximately a year its principals, unnamed in the record, had operated first under the name of Carpet Industries, then under State Wide, and finally under World Wide Distributors. The appellant dealt with all three companies and purchased notes from all three of them. The vice president of Peoples testified that he “had knowledge of the referral plan,” although he claimed that he was not familiar with the details of the plan. Immediately after the plaintiffs received a $50 check from World Wide for the first ten names furnished under the agreement, the vice president of Peoples called the plaintiffs to inquire whether they were satisfied with the transaction. He told them Peoples had nothing to do with the referral plan.
The referral plan was a fraudulent scheme based on an operation similar to the recurrent chain letter racket. It is one of many sales rackets being carried *57 on throughout the nation which are giving public officials serious concern.[1] The plaintiffs introduced evidence to show that at the end of 20 months of operation, it would require 17 trillion salesmen to carry on a referral program like World Wide described to the plaintiffs.
Peoples contend that even though World Wide may have been guilty of fraud, it can collect on the note because it was a holder in due course.
“A holder in due course is a holder who takes the instrument (a) for value; and (b) in good faith;[2] and (c) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person.” §3-302(1) of the Uniform Commercial Code of April 6, 1953, P. L. 3, as reenacted and amended by the Act of October 2, 1959, P. L. 1023, 12A P.S. §3-302(1).
Section 1-201(19) of the code defines “good faith” as meaning “honesty in fact in the conduct or transaction concerned.” Thus, to be a holder in due course Peoples must have acted in good faith.
“The freedom from the defense of prior equities afforded to a holder in due course is an extraordinary protection, which, although having its origin in the *58 law merchant, is closely akin to similar protection given in other types of cases by courts of equity; and running through all the authorities dealing with holders in due course we find the principle, not always stated, perhaps, that he who seeks the protection given one in that position must have dealt fairly and honestly in acquiring the instrument in controversy and in regard to the rights of all prior parties; this is the kind of good faith which the law demands, and the principle is closely analogous to the equitable doctrine of clean hands.” Fehr v. Campbell, 288 Pa. 549, 558, 137 A. 113, 116 (1927).
He who seeks protection as a holder in due course must have dealt fairly and honestly in acquiring the instrument as to the rights of prior parties, and where circumstances are such as to justify the conclusion that the failure to make inquiry arose from a suspicion that inquiry would disclose a vice or defect in the title, the person is not a holder in due course. Stroudsburg Security Trust Co. Case, 145 Pa. Superior Ct. 44, 48, 49, 20 A. 2d 890, 892 (1941); Fehr v. Campbell, supra, p. 555.
When the defense of fraud appears to be meritorious as to the payee, the burden of showing it was a holder in due course is on the one claiming to be such. Budget Charge Accounts, Inc. v. Mullaney, 187 Pa. Superior Ct. 190, 193, 144 A. 2d 438 (1958); Stroudsburg Security Trust Co. Case, supra, p. 49; Fehr v. Campbell, supra, pp. 554, 555.
The appellant here had knowledge of circumstances which should have caused it to inquire concerning the payee’s method of obtaining the note. Peoples knew enough about the referral plan to require it to inquire further concerning it. The fact that the appellant’s vice president called the makers of the note and denied any connection with the referral plan, indicates his own suspicion concerning it. The frequency with which the *59 principals changed the name under which they were operating — three times in approximately one year— should have added to his suspicion. Furthermore, the appellant paid $831 for a $1,079.40 note payable three days after date. See Gimbel Brothers, Inc. v. Hymowitz, 160 Pa. Superior Ct. 327, 329, 51 A. 2d 389 (1947). Under all the circumstances, Peoples was bound to inquire further into the operation of the seller of these notes, and having made no inquiry, it is held as though it had knowledge of all that inquiry would have revealed. Fehr v. Campbell, supra, p. 556. See also Fidelity Trust Co. v. Gardiner, 191 Pa. Superior Ct. 17, 155 A. 2d 405 (1959).
The appellant argues that the plaintiffs are es-topped from raising against it any defenses which they might have raised against World Wide, because they did not complain to the appellant when its vice president called them. The appellant’s hands are not clean enough to raise this point. Estoppels are used in law as a means to prevent fraud, and never to become its instruments. Pendleton v. Richey, 32 Pa. 58, 63 (1858).
Decree affirmed.

 See article of Wall Street Journal, page 1, October 10, 1963.

 Section 3-302(1) (b) of tbe Commercial Code of 1953 contained in addition to “in good faith” the following: “including observance of the reasonable commercial standards of any business in which the holder may be engaged.” This was eliminated by the amendment of 1959, supra. The part added to the law in 1953 and eliminated in 1959 according to the code comment “merely [made] explicit what has long been implicit in case-law handling of the ‘good faith’ concept.” 12A P.S. page 525. Subsection (1) as presently written corresponds to the Negotiable Instruments Law of May 16, 1901, P. L. 194, §52, now repealed, in that under that act, too, the holder had to taire the instrument “in good faith and for value” to qualify as a holder in due course. See 56 P.S. §132, now repealed.