**CALVERT CREDIT CORPORATION,**
**Appellant,**

v.

**Dalbert WILLIAMS and Birdeen W. Williams, Appellees.**

**No. 4683.**

District of Columbia Court of Appeals.

Argued July 8, 1969.

Decided Oct. 3, 1969.

---

H. Alan Young, Washington, D. C., with whom William R. Lichtenberg and Joseph Luria, Washington, D. C., were on the brief, for appellant.

Harry Friedman, Washington, D. C., for appellees.

Before KELLY, FICKLING and NE-BEKER, Associate Judges.

FICKLING, Associate Judge:

Appellant instituted this action to recover the balance due on a promissory note executed by appellees for the purchase of a central vacuum cleaning system and a color television console from National Commer-

cial Corporation. Appellees answered alleging, among other defenses, usury, fraud, and that appellant was not a holder in due course. At the close of appellant's case, which was tried to a jury, the trial judge granted appellees' motion for a directed verdict on the ground that the charges over and above the cost of the merchandise were usurious and, for that reason, appellant was not a holder in due course. On appeal, appellant challenges the correctness of that ruling.

The president of appellant corporation testified that on January 17, 1964, a conditional sales contract and note which had been executed by appellees on January 15, 1964, were purchased by the corporation for $2,162.35 from National Commercial Corporation. The contract showed a cash price of $2,284 and a time price of $3,199.32, including a charge of $93.16 for insurance. It also provided for 36 monthly payments at $88.87 per month. Introduced into evidence were a bill of sale dated January 15, 1964, showing a net sales price of $2,284, and a form letter dated January 16, 1964, from appellee Dalbert Williams to appellant stating that the merchandise was received and installed satisfactorily.

The president further testified that appellant had purchased from two to three hundred conditional sales contracts from National Commercial Corporation over a two-year period, and that the corporation was also in the money-lending business. Appellant admitted knowing that National normally added 12 percent per year to the cash price as the "time price difference." Appellees were investigated by appellant and were found to be a good credit risk. Prior to the purchase of the note, appellant had no contact with appellees.

Appellee Dalbert Williams was called as a witness by appellant and, on direct examination, testified that he holds a master's degree in social science and is an instructor at one of the local universities; that he had had previous experience in buying merchandise under conditional sales contracts;

and that he knew that the documents signed in the instant case were a conditional sales contract and a promissory note. However, on cross-examination he testified that he agreed to accept the merchandise from National Credit Corporation under an arrangement commonly known as a "referral plan." Under this plan, appellees were to supply National with a list of names of persons who might also be interested in purchasing merchandise from National. For each person who made a purchase, appellees' outstanding balance was to be credited with $100. Appellees were told by National's salesman that, as a part of the arrangement, they were required to sign the sales agreement and note as a mere formality; that the total price of the merchandise would be $1,000, but not more than $1,200; and that it would be the "remotest possibility" that they would have to pay anything for the merchandise out of their own pockets under the referral plan. They signed the documents in blank because the salesman did not have the exact figures with him. Appellees received $200 under the plan and sent that amount to appellant. They made no further payments and offered to return the merchandise. At this stage of the proceeding, appellant rested its case and appellees moved for a directed verdict.

■ We hold that the issue of whether the contract was a time sale or a loan and a cloak for usury, and the issue of whether appellant was a holder in due course, were questions of fact to be decided by the jury,[1] since this was a jury rather than a non-jury case.

■ The jury in reaching a determination as to whether the so-called time price was *bona fide* as such or only a cloak for usury should, in the instant case, consider: (1) the working arrangement between appellant and seller; (2) appellant's knowledge of seller's 12 percent add-on; and (3) the extent of seller's knowledge, when quoting a price to a customer, that he could discount the paper so that the return on the investment would exceed the legal rate of interest. *See* Millard v. Lorain Investment Corporation, D.C.Mun.App., 184 A.2d 630 (1962). The trial judge's reliance upon Beatty v. Franklin Investment Co., 115 U.S. App.D.C. 311, 319 F.2d 712 (1963), was misplaced because that was a non-jury trial and the factual issues were decided by the trial judge.

■ In the case at bar, if the jury decides that the contract was usurious, it then should determine whether or not appellees were victims of a fraudulent scheme.[2] If they were, that would preclude recovery of any sum by appellant. Millrose Corp. v. Brent, 106 U.S.App.D.C. 242, 271 F.2d 508 (1959).

■ Since the trial court made an improper ruling that the contract was usurious, its ruling that appellant was not a holder in due course was also erroneous. Generally, the issue of whether or not one is a holder in due course is one of fact. White v. Luber, D.C.Mun.App., 144 A.2d 774 (1958). *Cf.* Calvert Credit Corporation v. Williams, *supra* n. 2.

We note that when appellees made their motion for a directed verdict, they had put on part of their affirmative defenses during cross-examination of appellee Dalbert Williams over the objection of appellant. The better practice is for the trial judge to refuse to entertain such motion on the ground of waiver and permit the defendant to complete his defense.

For the foregoing reasons, we

Reverse with instruction to grant a new trial.

1. Brooks v. Auto Wholesalers, Inc., D.C. Mun.App., 101 A.2d 255 (1953).

2. The referral plan system has been severely criticized as a fraudulent sales racket. Norman v. World Wide Distributors, Inc., 202 Pa.Super. 53, 195 A.2d 115 (1963). Appellant has been involved with referral plans in the past and is familiar with their use. *See* Calvert Credit Corp. v. Williams, D.C.App., 244 A.2d 494 (1968).