## Randolph National Bank v. Carlton W. Vail

[308 A.2d 588]

No. 82-72

Present: Shangraw, C.J., Barney, Smith, Keyser and Daley, JJ.

Opinion Filed June 5, 1973

Motion for Reargument Denied August 8, 1973

*Thomas P. Wright, Esq.,* Woodstock, for Plaintiff.

*Robert J. O'Donnell, Esq.,* Woodstock, for Defendant.

**Shangraw, C.J.** This action was commenced by Randolph National Bank against Carlton Vail to recover the balance due

on a promissory note held by the bank. After hearing a motion for summary judgment brought by Randolph National Bank and reviewing the affidavits filed therewith, the trial court granted the motion and ordered judgment for the bank in the amount of $5,473.79, including interest and costs. Soon after, Carlton Vail appealed from that judgment order, thereby bringing this action to this Court for review.

The facts presented in the affidavits, about which there is no material issue, disclose that in October, 1968, Carlton Vail entered into an oral agreement with Gerry Smith and Bruce Stearns, doing business under the name of Smith and Stearns, pursuant to which Smith and Stearns was to construct a home for Mr. Vail and his family in Barnard, Vermont. Smith and Stearns last worked on the house in September, 1969; however, several times thereafter, Mr. Vail requested Smith and Stearns to correct certain deficiencies and errors made in the construction of the house and to make appropriate corrections in their bill.

On November 1, 1969, Gerry Smith of Smith and Stearns went to the Randolph National Bank to inquire about procuring a loan from the bank to pay some of the building suppliers to whom Smith and Stearns owed money. During this meeting, Mr. Smith informed the bank about the debt owed to Smith and Stearns by Carlton Vail arising from the construction of the Vail residence. In view of this debt the bank agreed to make a loan to Smith and Stearns if they would have Mr. Vail sign a promissory note made payable to Smith and Stearns that could be endorsed to Randolph National Bank. At the time of the meeting there was no mention made to the bank of any conflict between Smith and Stearns and Mr. Vail, or of any dissatisfaction on the part of Mr. Vail with the work of Smith and Stearns.

Mr. Vail agreed to sign such a note and on November 14, 1969, did so at his residence in Barnard, having no contact with Randolph National Bank prior to that time. The promissory note was made payable to Smith and Stearns at the Randolph National Bank and was in the sum of $4,805.94. It was signed by Mr. Vail on the assumption that the work on the house would be completed and that the improperly constructed items would be corrected. On November 18, 1969, the promissory note was endorsed in blank by Gerry Smith

and Bruce Stearns, doing business as Smith and Stearns, and then presented to the Randolph National Bank so the loan could be made. At no time prior to the receipt of the promissory note did Randolph National Bank have any knowledge tending to indicate there were any defenses or claims against the note. However, after the promissory note became due and the bank contacted Mr. Vail about his failure to make payment, it learned of Mr. Vail's dissatisfaction with the work of Smith and Stearns.

In this appeal Carlton Vail makes a two-pronged argument in which he contends the Randolph National Bank holds the promissory note subject to all the personal defenses that he had against Smith and Stearns. In so doing, Mr. Vail seeks to have this Court deny Randolph National Bank the rights of a holder in due course provided in 9A V.S.A. § 3–305 that were accorded to the bank by the trial court, and reverse the judgment entered below upon those rights.

██ ██ Appellant's first argument looks to Chapter 63 of Title 9 which he contends applies to this transaction. This chapter was enacted by the legislature to protect the public against unfair methods of competition and unfair or deceptive acts or practices on the part of the business community. 9 V.S.A. § 2451. In this regard, the legislature sought in part to protect the public against the problems connected with the financing of consumer transactions and enacted 9 V.S.A. § 2455, which provides:

> "The holder of a promissory note or instrument or other evidence of indebtedness of a consumer delivered in connection with a contract shall take or hold that note, instrument or evidence subject to all defenses of such consumer which would be available to the consumer in an action on a simple contract, and all rights available to him under this chapter."

The effect of 9 V.S.A. § 2455 is to cut off the rights of a holder in due course of a promissory note found in 9A V.S.A. § 3–305, and to make a subsequent holder subject to all the defenses of a consumer. The protection afforded the consumer through 9 V.S.A. § 2455 is a result of legislative recognition of the substantial differential in bargaining power be-

tween the seller and financier on one side and the consumer on the other, and must be viewed as an attempt to equalize that differential by transferring the risk of loss from the note maker to the note holder. See Comment, *Judicial and Statutory Limitations on the Rights of a "Holder in Due Course" in Consumer Transactions,* 11 Boston College Industrial and Commercial Law Review 90, 108–11 (1971).

■ ■ Our inquiry into the argument raised by the appellant must commence with a determination of whether or not 9 V.S.A. § 2455 applies to the unusual facts presented in this case. There can be no doubt that at the time Mr. Vail entered into the agreement with Smith and Stearns he was a consumer contracting for goods and services as defined in 9 V.S.A. § 2454. However, what does remain for our inquiry is whether or not the promissory note was delivered in connection with a contract so as to come within the scope of the protection afforded by 9 V.S.A. § 2455. At the time Mr. Vail signed the promissory note, over a year had passed since the agreement had been entered into, and work on the house had been completed with the exception of those items which Mr. Vail assumed Smith and Stearns would correct. Thus, at the time the note was signed, substantial performance on the agreement had already been effectuated. *Vermont Structural Steel* v. *Brickman,* 126 Vt. 520, 523–24, 236 A.2d 658 (1967). For this reason, the note must be characterized as security for a pre-existing obligation, and not the type of transaction where the consumer receives the goods and services at the time he signs the contract and promissory note. This difference is critical, for it is apparent Mr. Vail knew what his potential defenses were against Smith and Stearns when he signed the promissory note, as he had received the goods and services prior to that time. Accordingly, Mr. Vail cannot be characterized as the unsuspecting consumer that 9 V.S.A. § 2455 was designed to protect; and consequently, Randolph National Bank cannot be held to hold the promissory note subject to his personal defenses.

The second argument raised by the appellant looks to the judicially developed doctrine of "close connectedness" through which courts have denied the purchaser of a negotiable instrument the status of a holder in due course when he has

been found too closely connected to his transferor. *E.g., Unico v. Owens,* 50 N.J. 101, 232 A.2d 405 (1967); *Commercial Credit Co.* v. *Childs,* 199 Ark. 1073, 137 S.W.2d 260 (1940); *cf. Gramatan National Bank and Trust Co.* v. *Beecher,* 122 Vt. 366, 173 A.2d 163 (1961). In this respect, it is the appellant's contention that by virtue of Randolph National Bank's dealings in this transaction it was the moving force behind the execution of the promissory note.

Although the facts which give rise to a denial of holder in due course status to a lender are varied, it can be generally said it has not been applied except where there has been an inter-relationship of ownership between the seller and the lender, approval or the establishment or both of the seller's practices by the lender, reliance upon the lender by the seller amounting to a principal-agent relationship, or an independent check of the debtor's credit by the lender all in a situation where fraud of some form can be shown to be present. *General Investment Corp.* v. *Angelini,* 58 N.J. 396, 278 A.2d 193 (1971); *International Finance Corp.* v. *Rieger,* 272 Minn. 192, 137 N.W.2d 172 (1965); *Westfield Investment Co.* v. *Fellers,* 74 N.J. Super. 575, 181 A.2d 809 (1962); *Commercial Credit Corp.* v. *Orange County Machine Works,* 34 Cal.2d 766, 214 P.2d 819 (1950). See also Annot., 44 A.L.R.2d 8 (1955).

In the case at bar the facts presented in the affidavits indicate a far different set of circumstances than those where the lender has been found to be the moving force behind the transaction, and denied the status of a holder in due course. There is nothing in the affidavits to indicate this transaction was more than a one-time encounter between Smith and Stearns and Randolph National Bank. In addition, it is undisputed that Randolph National Bank had no knowledge of any defense to the promissory note or notice of any claim of failure of consideration at the time the note was presented to it by Smith and Stearns, and that Mr. Vail had no contact with the bank prior to the execution of the note. Moreover, at the time the note was signed, Smith and Stearns had substantially performed their part of the agreement, and all that remained was the work on the items which Mr. Vail assumed would be corrected.

The appellant also argues that because Randolph National Bank was the moving force, it had a duty to inquire of the

circumstances behind the transaction as the court in *Norman v. Worldwide Distributors, Inc.*, 202 Pa. Super. 53, 195 A.2d 115 (1963), held. In *Norman*, the court reached this conclusion after it found Worldwide Distributors to be "reeking with malodorous fraud" *Id.*, 195 A.2d at 116, and the circumstances under which the lender accepted the notes so suspicious the lender should have inquired of the circumstances behind the transaction. Contrasted to *Norman* in the case at bar where Randolph National Bank had no knowledge of any facts tending to show there was something irregular about the transaction.

On the facts of this case, we can only conclude there was nothing present to justify denying Randolph National Bank its rights as a holder in due course as a matter of law. Therefore, the trial court properly granted the motion for summary judgment.

*Judgment affirmed.*

**Barney, J.** (Dissenting). The majority opinion concedes the factual situation is unusual in this case. I agree. Feeling, as I do, that the summary judgment procedures of V.R.C.P. 56 are intended to apply to cases where there is "no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law", I find its application questionable here. Since the procedure is a denial of an evidentiary trial, its application, to be consistent with the rights of litigants, must have a narrow ambit. These concerns have stronger appeal than the advantages of judicial efficiency, and, in any doubtful case, I would resolve the issue in favor of the right to trial, even though the outcome might be the same.