670 A.2d 684

Robert J. TRIFFIN, Appellant

v.

Stacey Anne DILLABOUGH, and American Express Travel
Related Services Company, Inc., Appellees.

Robert TRIFFIN, Appellant

v.

Robert LYNN, and American Express Travel Related
Services Company, Inc., Appellees.

Superior Court of Pennsylvania.

Argued June 20, 1995.

Filed Jan. 18, 1996.

76

Robert J. Triffin, appellant, pro se.

Steven Sklar, Philadelphia, for appellees.

Before CAVANAUGH, WIEAND and OLSZEWSKI, JJ.

WIEAND, Judge:

The issue in this appeal is whether blank money orders, which were stolen prior to being sold and subsequently com-

pleted without authorization, are negotiable instruments, and, if so, whether a holder in due course has a right to payment on the instruments despite a lack of initial consideration and the absence of delivery. Robert J. Triffin, the plaintiff/appellant herein, instituted an action to obtain payment on the stolen money orders after payment had been refused by defendant, American Express Travel Related Services Co., Inc. (American Express). Following a non-jury trial, the trial court determined that the money orders were not negotiable instruments under the Uniform Commercial Code—Commercial Paper, 13 Pa.C.S. § 3101 et seq. (1979), and entered judgment in favor of American Express. Post-trial motions were denied, and judgment was entered on the verdict. This appeal followed. After careful review, we reverse and enter judgment in favor of plaintiff/appellant.

On December 11, 1990, two American Express money orders in the amounts of $550 and $650 respectively, which were payable to Stacey Anne Dillabough, were presented to Chuckie Enterprise, Inc. (Chuckie's), a cash checking operation in Philadelphia. On February 25, 1991, a third American Express money order in the amount of $200, payable to Robert Lynn, was presented. The money orders were duly endorsed, and photo identifications were provided by the payees; whereupon, Chuckie's paid the face amounts minus a two percent fee.

The two Dillabough money orders had been stolen from the premises of an American Express agent; and, in a separate incident, the Lynn money order had been stolen during shipment to an authorized agent. When stolen, the money orders were signed, but were blank as to payee, date, sender and amount. When presented to Chuckie's, however, the money orders had been completed. Prior to being stolen, the money orders bore the pre-printed signature of the Chairman of American Express. The money orders were passed through the usual bank collection channels and were presented for payment at United Bank of Grand Junction, Colorado. American Express, having noted on its "fraud log" that the money orders were stolen, returned the money orders marked "Re-

ported Lost or Stolen—Do Not Redeposit." American Express refused to pay the amounts of the money orders.

Triffin, a commercial discounter, purchased the dishonored money orders for cash from Chuckie's and took an assignment of all Chuckie's rights, claims and interests in the money orders. On July 16, 1992, Triffin filed a complaint against Dillabough and American Express, and, on August 20, 1992, he filed a second complaint against Lynn and American Express. In these actions, Triffin demanded payment of the stolen money orders. The two cases were consolidated, and Triffin entered judgment by default against Dillabough and Lynn without prejudice to his claims against American Express. On September 14, 1994, the case proceeded to trial, after which the trial court entered a verdict in favor of American Express.

In finding in favor of American Express, the trial court held that the money orders in question could not be construed as "negotiable instruments" because American Express never had made any promise or order to pay a sum certain. See: 13 Pa.C.S. § 3104(a)(2) (1979) (requisites to negotiability). Furthermore, the trial court held, American Express had no liability as drawer on the money orders because it had never issued the money orders.[1] See: 13 Pa.C.S. § 3413 (1979) (contract of drawer). On appeal, Triffin asserts that, under Division 3 of the Pennsylvania Uniform Commercial Code, the money orders must be considered to be negotiable instruments, and, as such, American Express is precluded from disclaiming liability to a holder in due course merely because the money orders were completed without authority by unknown persons.

"The role of an appellate court in reviewing the trial court's final judgment is to determine whether the findings of the trial court are supported by competent evidence and

1. "Issue" is defined by the UCC as "[t]he first delivery of an instrument to a holder or a remitter." 13 Pa.C.S. § 3102(a) (1979). "Holder" is a "person who is in possession of . . . an instrument . . . drawn, issued or indorsed to him or to his order or to bearer or in blank." 13 Pa.C.S. § 1201 (1979), as amended in 1982.

whether the trial court committed error in the application of law; findings of the trial judge in a non-jury case must be given the same weight and effect on appeal as a verdict of a jury and will not be disturbed on appeal absent error of law or abuse of discretion." *Olmo v. Matos,* 439 Pa.Super. 1, 5–6, 653 A.2d 1, 3 (1994).

■ In the instant case, the threshold issue to be decided is whether the stolen money orders were negotiable instruments. The parties agree that if the money orders were not negotiable instruments, then Triffin has no basis for a cause of action against American Express.

For purposes of determining the negotiability of a given instrument, we must look to 13 Pa.C.S. § 3104, which, at all times relevant to the instant case, provided as follows:

§ 3104. **Form of negotiable instruments; "draft"; "check"; "certificate of deposit"; "note"**

(a) **Requisites to negotiability.**—Any writing to be a negotiable instrument within this division must:

(1) be signed by the maker or drawer;

(2) contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation or power given by the maker or drawer except as authorized by this division;

(3) be payable on demand or at a definite time; and

(4) be payable to order or to bearer.

(b) **Types of negotiable instruments.**—A writing which complies with the requirements of this section is:

(1) A "draft" ("bill of exchange") if it is an order.

(2) A "check" if it is a draft drawn on a bank and payable on demand.

(3) A "certificate of deposit" if it is an acknowledgment by a bank of receipt of money with an engagement to repay it.

(4) A "note" if it is a promise other than a certificate of deposit.

**(c) Applicability of terms to nonnegotiable instruments.**—As used in other divisions of this title, and as the context may require, the terms "draft," "check," "certificate of deposit" and "note" may refer to instruments which are not negotiable within this division as well as to instruments which are so negotiable.

13 Pa.C.S. § 3104 (1979).[2]

The Comment to section 3104 of the Code provides that "[a]ny writing which meets the requirements of subsection ( [a] ) and is not excluded under Section 3–103 is a negotiable instrument, and all sections of this Article apply to it, even though it may contain additional language beyond that contemplated by this section." 13 Pa.C.S. § 3104, Comment 4 (1979). Our research has disclosed no cases decided by Pennsylvania courts which discuss the negotiability of money orders of the type at issue in this case. However, in *Hong Kong Importers, Inc. v. American Express Co.,* 301 So.2d 707 (La.App.1974), the Louisiana Court of Appeal considered whether money orders issued by American Express were negotiable instruments and reasoned as follows:

We find no definition of "money order" in our Negotiable Instruments Law, LSA–R.S. 7:1–7:195. The term, "money order," may encompass non-negotiable as well as negotiable instruments. It may be issued by a governmental agency, a bank, or a private person or entity authorized to issue same. The essential characteristic common to all these various types of money orders is that it is purchased for the purpose of paying a debt or to transmit funds upon the credit of the issuer of the money order. At the time of its purchase, the purchaser pays to the issuer the principal amount of the money order and usually also pays a fee to

**2.** We observe that Pennsylvania's Commercial Code was substantially amended on July 9, 1992, effective one year from the date of amendment. Because all transactions at issue in this appeal were completed prior to the effective date of the 1992 amendments, those amendments have no application in the instant case. As such, all references to the Code contained in this Opinion are to the "Uniform Commercial Code," Act of November 1, 1979, P.L. 255, No. 86, § 1.

the issuer for the issuance or the transmission of the principal amount represented by it. . . .

The instruments before us have the characteristics of a check and a note. They also have similar characteristics of a bank money order and a personal money order. Whatever designation is given to the instruments they are negotiable instruments and governed by the Negotiable Instruments Law. LSA–R.S. 7:1–7:195.

*Hong Kong Importers, Inc. v. American Express Co., supra* at 709–710 (footnotes omitted). Similarly, the Colorado Court of Appeals has observed, by way of dictum, that "a money order issued by an express company may take a form akin to a check or similar to a promissory note, depending on its precise contents. For example, those issued by the American Express Company are said to be the equivalents of promissory notes." *Computer Works, Inc. v. CNA Insurance Co.,* 757 P.2d 167, 168 (Colo.App.1988), citing 6 J. Reitman, *Banking Law,* § 112.02 (1987).

Prior to being stolen the American Express money orders read: "AMERICAN EXPRESS MONEY ORDER ... CHASE SAVINGS BANK ... DATE (blank). PAY THE SUM OF (blank), NOT GOOD OVER $1,000, TO THE ORDER OF (blank). Louis V. Gerstner, Chairman. SENDER'S NAME AND ADDRESS (blank). Issued by American Express Travel Related Services Company, Inc., Englewood, Colorado. Payable at United Bank of Grand Junction, Downtown, Grand Junction, Colorado." The two Dillabough instruments were in this form. The third Lynn instrument was identical, except it did not bear an authorized agent's name, e.g., Chase Savings Bank, and was not good for over $200.

The first requisite of negotiability is that the instrument "be signed by the maker or drawer." 13 Pa.C.S. § 3104(a)(1) (1979). No person is liable on an instrument unless his signature appears thereon. 13 Pa.C.S. § 3401 (1979). The Code defines "signed" as meaning "any symbol executed or adopted by a party with present intention to authenticate a writing." 13 Pa.C.S. § 1201. A "symbol" can

be considered a signature only if the signing party intended it to serve as such. See: *Federal Deposit Ins. Corp. v. Victory Lanes,* 158 B.R. 617, 623 (E.D.Va.1993). "In deciding whether a party has affixed its name to an instrument with a 'present intention' to authenticate the instrument, courts must use common sense and commercial experience." *First Nat. Bank in Alamosa v. Ford Motor Credit Co.,* 748 F.Supp. 1464, 1468 (D.Colo.1990); *Mel–Tex Valve, Inc. v. Rio Supply Co., Inc.,* 710 S.W.2d 184, 186 (Tex.App.—Houston [1st Dist.] 1986). See also: 13 Pa.C.S. § 1201, Comment 39 (1979). "Authentication may be printed, stamped or written; it may be by initials or by thumbprint." *Id.;* 1976 Op.Pa.Atty.Gen. No. 31. "A signature may be handwritten, typed, printed or made in any manner." *Interfirst Bank Carrollton v. Northpark Nat. Bank of Dallas,* 671 S.W.2d 100, 104 (Tex.App. 8 Dist.1984). See also: *Carna v. Bessemer Cement Co.,* 558 F.Supp. 706, 708–709 (W.D.Pa.1983); *Continental Coffee v. Banque Lavoro S.A.,* 852 F.Supp. 1235, 1240 n. 8 (S.D.N.Y.1994); *Plemens v. Didde–Glaser, Inc.,* 244 Md. 556, 224 A.2d 464, 467–468 (1966); *Evans v. Moore,* 131 Ga.App. 169, 205 S.E.2d 507, 508 (1974). When the effectiveness of a signature is put in issue, the signature is presumed to be genuine or authorized. 13 Pa. C.S. § 3307 (1979).

The stolen money orders in the instant case each bore the pre-printed signature of Louis Gerstner, Chairman of American Express. There was nothing about the signature's printed form which would defeat the instrument's negotiability. Moreover, the location of Gerstner's signature, i.e., at the far right of each instrument, below the place intended for completion of the date, amount, and payee's name, indicated an intent that the signature operate as the signature of "the maker or drawer." " '[B]y long established practice judicially noticed or otherwise established a signature in the lower right hand corner of an instrument indicates an intent to sign as the maker of a note or the drawer of a draft.' " *First Nat. Bank in Alamosa v. Ford Motor Credit Co., supra* 748 F.Supp. at 1469, quoting U.C.C. § 3–402 official comment. The only additional mark which American Express intended to place on

the instruments was a checkwriter's embossment of a dollar amount that was equal to the amount of cash collected by its authorized agent from the purchaser, minus a small fee. No counter-signature was required. Accordingly, it seems clear that American Express affixed the pre-printed signature of Louis Gerstner on the instruments with the present intention to authenticate the instruments; and therefore, we conclude that the instruments were "signed by the maker or drawer."

 The remaining requisites of negotiability are not contested, but with one exception. American Express contends that the instruments do not contain "an unconditional promise or order to pay." 13 Pa.C.S. § 3104(a)(2) (1979). Under the Code, a promise is an "undertaking to pay," and an order is a "direction to pay." 13 Pa.C.S. § 3102(a) (1979). American Express contends that it did not undertake to make payment or direct payment by another on its printed money orders because an authorized representative of American Express did not perform the affirmative act of issuing the stolen money orders. The act required for negotiability, it is contended, occurs after an authorized agent, in consideration of the money paid by the purchaser to the agent, embosses a dollar amount on the face of the money order. After embossing the instrument, American Express argues, the agent "issues" a negotiable money order to the purchaser.

 The act of being issued or first delivered is not required for a writing to become a negotiable instrument. See: 13 Pa.C.S. § 3104 (1979). The American Express money orders directed a holder to "pay the sum of (blank) . . . to the order of (blank)." Nothing more was required to establish "an unconditional promise or order to pay." Accordingly, we hold that the American Express money orders meet all the requisites of negotiability and, thus, are negotiable instruments.

 Regardless of whether the money orders constitute negotiable instruments, American Express argues that it is not liable on the instruments. American Express denies that it is the drawer and asserts it has no liability on the instruments because it never issued the money orders, never intended to draw the instruments, never engaged to pay a holder,

and never accepted the money orders. Appellant, on the other hand, contends that American Express is liable on the instruments and that each of the defenses raised must fail because appellant stands in the shoes of a holder in due course.

A "drawer" is the person who causes a draft to be written and signs it. See: Black's Law Dictionary 444 (5th ed. 1979) (defining "draw" and "drawer"). "The drawer engages that upon dishonor of the draft and any necessary notice of dishonor or protest he will pay the amount of the draft to the holder...." 13 Pa.C.S. § 3413(b) (1979). Instantly, American Express printed the money orders with the intent to sell them to customers who could then freely transfer the instruments in the marketplace. Toward this end it affixed the signature of its Chairman to the money orders. In all respects, the money orders appeared to be negotiable instruments and were devoid of any indication that they were not negotiable. Accordingly, we are satisfied that American Express is the drawer and that it drew the money orders when it printed them.

Even if it be deemed the drawer of the money orders, American Express contends that it is not liable to appellant because of the legal effect of a legend appearing on the reverse side of the money orders. The legend, American Express argues, functions as the tenor of American Express's engagement to pay and relegates the money orders to "drawn without recourse" status. See: 13 Pa.C.S. § 3413(b) (1979) (a drawer may disclaim its liability by drawing without recourse). Appellant, on the other hand, asserts that a drawer's preprinted liability disclaimer for its stolen negotiable instruments is not enforceable against a holder in due course.

The legend on American Express's money orders provides as follows:

IMPORTANT

*DO NOT CASH FOR STRANGERS*

THIS MONEY ORDER WILL NOT BE PAID IF IT HAS BEEN ALTERED OR STOLEN OR IF AN ENDORSE-

MENT IS MISSING OR FORGED. BE SURE YOU HAVE EFFECTIVE RECOURSE AGAINST YOUR CUSTOMER.

----------------------------

## PAYEE'S ENDORSEMENT

American Express argues that the legend on the back of its money order is an integral part of the contract and is an enforceable limitation on its promise to pay the holder. In support of this contention, it cites *Citizens & Southern Bank of Atlanta v. Daniel,* 107 Ga.App. 398, 130 S.E.2d 231 (1963), where the Georgia Court of Appeals determined that the tenor of the contract included a legend appearing on the instrument's face which stated "Void if not cashed within 60 days." The Georgia Court held that such a legend was enforceable. *Id.,* 130 S.E.2d at 233. However, a Louisiana appellate court characterized a legend substantially similar to the language and placement of the one at issue in the instant case to be "simply a warning to one who cashes the money order that he should have recourse against a payee-endorser...." *Hong Kong Importers, Inc. v. American Express, supra* 301 So.2d at 710.

We are not persuaded that the legend on the reverse side of American Express's money order constitutes the tenor of the instrument or that it renders the money order without recourse. The legend, rather, is a warning to one who cashes the money order. *Hong Kong Importers, Inc. v. American Express, supra.* The instruments in this case were cashed according to their tenor, which was that they were "not good for over $1,000" on the Dillabough money orders and "not good for over $200" on the Lynn money order.

When stolen from American Express, the three money orders were incomplete in several respects. Completion was to be accomplished upon sale to a customer. Instead, completion was accomplished by persons unknown prior to sale. It is undisputed that the completion was unauthorized. When completion is unauthorized, "the rules as to material alteration

apply (section 3407), even though the paper was not delivered by the maker or drawer...." 13 Pa.C.S. § 3115(b) (1979). Under section 3407, a "holder in due course may in all cases enforce the instrument according to its original tenor, and when an incomplete instrument has been completed, he may enforce it as completed." 13 Pa.C.S. § 3407(c) (1979).

According to sections 3115 and 3407 of the Code, the three stolen American Express money orders can be enforced as completed, if appellant has the rights of a holder in due course. This result is intended by the Code even though the money orders were stolen and were completed after the theft. See: 13 Pa.C.S. § 3407, Comment 4 (1979). See also: *Sendery v. American Express Co.*, 16 U.C.C. Rep. Serv. 753, 1975 WL 22846 (1975) (American Express traveler's checks issued in blank and stolen in transit were payable in the hands of a holder in due course.) "[U]nder [Sections 3305 and 3407] neither non-delivery nor unauthorized completion is a defense against a holder in due course...." 13 Pa.C.S. § 3115, Comment 5 (1979). "Generally stated, and most simply, if plaintiff is a holder in due course, the defense of theft must fail." *Dubin v. Hudson County Probation Department*, 267 N.J.Super. 202, 630 A.2d 1207, 1210 (N.J.Super.L.1993).

"After it is shown that a defense exists a person claiming the rights of a holder in due course has the burden of establishing that he or some person under whom he claims is in all respects a holder in due course." 13 Pa.C.S. § 3307(c) (1979). A holder in due course is a "holder who takes the instrument: (1) for value; (2) in good faith; and (3) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person." 13 Pa.C.S. § 3302(a) (1979). Good faith is "[h]onesty in fact in the conduct or transaction concerned." 13 Pa.C.S. § 1201. See: *Norman v. World Wide Dist., Inc.*, 202 Pa.Super. 53, 57, 195 A.2d 115, 117 (1963).

It is not disputed that if Chuckie's, as appellant's assignor, was a holder in due course, then appellant also stands in the shoes of a holder in due course. The trial court made no

specific determination that Chuckie's was a holder in due course, but, after hearing the evidence, the court did express its belief that Chuckie's had acted in good faith when it paid value for the money orders. Nevertheless, American Express argues that we should remand the case for a decision by the trial judge, as finder of fact, to determine whether Chuckie's achieved holder in due course status. American Express asserts that the legend printed on the reverse side of each instrument, together with the circumstances surrounding the transactions, created a heightened duty of inquiry upon Chuckie's for the purpose of establishing "good faith" and served as notice of voidability sufficient to present notice of a defense.

Under normal circumstances, good faith for purposes of determining whether a party is a holder in due course is a question of fact for the fact finder. However, where the evidence is undisputed and conclusive, good faith can be determined as a matter of law. *Manufacturers and Traders Trust Co. v. Murphy,* 369 F.Supp. 11, 13 (W.D.Pa.1974), *aff'd,* 517 F.2d 1398 (3rd Cir.1975). Instantly, the record permits a determination as a matter of law.

With respect to holder in due course status, the Superior Court has observed:

"[R]unning through all the authorities dealing with holders in due course we find the principle, not always stated, perhaps, that he who seeks the protection given one in that position must have dealt fairly and honestly in acquiring the instrument in controversy and in regard to the rights of all prior parties; this is the kind of good faith which the law demands, and the principle is closely analogous to the equitable doctrine of clean hands." *Fehr v. Campbell,* 288 Pa. 549, 558, 137 A. 113, 116 (1927).

He who seeks protection as a holder in due course must have dealt fairly and honestly in acquiring the instrument as to the rights of prior parties, and where circumstances are such as to justify the conclusion that the failure to make inquiry arose from a suspicion that inquiry would disclose a

vice or defect in the title, the person is not a holder in due course. *Stroudsburg Security Trust Co. Case,* 145 Pa.Superior Ct. 44, 48, 49, 20 A.2d 890, 892 (1941); *Fehr v. Campbell, supra,* [288 Pa. at] p. 555 [137 A. 113].

*Norman v. World Wide Dist., Inc., supra,* 202 Pa.Super. at 58, 195 A.2d at 117–118. See also: *Hanley v. Epstein,* 107 Pa.Super. 507, 164 A. 122 (1933). "[M]ere suspicion or knowledge of facts sufficient to put a prudent man on inquiry without actual knowledge does not prevent a transferee from becoming a bona fide holder, unless the failure to inquire amounts to bad faith. Suspicious circumstances are not enough unless bad faith reasonably can be inferred from them." *In re Stroudsburg Security Trust Co.,* 145 Pa.Super. 44, 48, 20 A.2d 890, 892 (1941). See also: *Fehr v. Campbell,* 288 Pa. 549, 558, 137 A. 113, 116 (1927); *Second National Bank of Clarion v. Morgan,* 165 Pa. 199, 30 A. 957 (1895). See also: *Bankers Trust Co. of Western N.Y. v. Crawford,* 781 F.2d 39, 45 (3rd Cir.1986).

■ The evidence showed that Charles Giunta, president of Chuckie's Enterprise, a check cashing business operated by Giunta since 1989, followed his customary procedures during the underlying transactions. He required and obtained photo identification from Dillabough and Lynn. He also recognized these individuals as previous customers. The instruments were complete and regular on their face when presented; and Chuckie's paid the face amount of the money orders, minus its regular fee. The surname of the sender on the Dillabough instruments was not decipherable, and the sender's address was missing from the Lynn instrument.[3] Giunta testified that he was familiar with money orders and he had no reason to believe the money orders in question would not be paid when presented. The evidence also showed that Giunta cashed the money orders presented by Dillabough and Lynn within thirty days of the completed date on the money orders.

3. The sender on the Dillabough instruments was a David W. (last name not decipherable) of 436 E. Allegheny Ave.; the sender on the Lynn instrument was Michael C. Pepe with no address listed.

American Express disputes that Chuckie's attained holder in due course status because, under the circumstances, Chuckie's failed to ascertain information about the senders on the instruments and should have contacted American Express to determine if the money orders were properly payable before cashing them.

Contrary to American Express's position, we hold that the circumstances surrounding the subject transactions were not of a sufficiently suspicious nature as to require heightened inquiry by Chuckie's in order to establish the "good faith" element necessary for holder in due course status. Chuckie's required Dillabough and Lynn to produce proper photo identification. Chuckie's also recognized these customers from prior transactions. The mere illegibility of one sender's surname and the absence of the other's address did not suggest that lack of further inquiry arose from a suspicion that inquiry would disclose a vice or defect in the title.

 American Express also argues that because the instruments state "[t]his money order will not be paid if it has been altered or stolen," Chuckie's should have inquired of American Express as to whether the money orders were properly payable. Given the general rule in Pennsylvania that there is no affirmative duty to inquire, we find no reason to hold that the legend established such a duty, nor will we find that the mere presence of the legend would raise suspicion as to a vice or defect in the title. Therefore, we hold that Chuckie's was a holder in due course of the three American Express money orders which were stolen from American Express and completed without authorization by persons unknown. Appellant, by assignment, holds the same rights in the instruments as was previously held by Chuckie's.

 Finally, we consider the failure of consideration defense raised by American Express. It is undisputed that no consideration was paid to American Express for its liability on the money orders. Under the Code, however, "[w]ant or failure of consideration is a defense as against any person not having the rights of a holder in due course...." 13 Pa.C.S.

§ 3408 (1979). Since appellant does have the rights of a holder in due course, the failure of consideration defense must fail.

By way of summary, we hold that the money orders sued upon are negotiable instruments. We further hold that appellant has the rights of a holder in due course and is entitled to payment on the instruments. Our conclusion is consistent with the purpose of the Uniform Commercial Code "to meet the contemporary needs of a fast moving commercial society," *Arcuri v. Weiss,* 198 Pa.Super. 506, 510, 184 A.2d 24, 26 (1962), and to "enhance the marketability of negotiable instruments [allowing] bankers, brokers, and the general public to trade in confidence." *Manor Bldg. Corp. v. Manor Complex Assoc. Ltd.,* 435 Pa.Super. 246, 253, 645 A.2d 843, 846 (1994) (en banc). Furthermore, while American Express received no consideration for its liability on the instruments, our result is consistent with the established policy in Pennsylvania that "as between two innocent parties . . . liability should be borne by the one . . . who made the loss possible." *Weiner v. The Pennsylvania Co. for Insurances on Lives and Granting Annuities,* 160 Pa.Super. 320, 325, 51 A.2d 385, 388 (1947). Accord: *Garden Check Cashing Serv., Inc. v. Chase Manhattan Bank,* 46 Misc.2d 163, 258 N.Y.S.2d 918 (1965).

The judgment in favor of American Express is reversed and is now entered in favor of appellant.

CAVANAUGH, J., did not participate in the consideration or decision of this appeal.