GENERAL INVESTMENT CORP., A CORPORATION OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. ANTHONY V. ANGELINI AND DOLORES H. ANGELINI, DEFENDANTS-APPELLANTS, AND LUSTRO ALUMINUM PRODUCTS, INC., DEFENDANT.

Argued February 8, 1971—Decided June 7, 1971.

398

*Mr. Milton T. Lasher* argued the cause for appellants (*Mr. Howard M. Kaplan* of counsel and on the brief; *Mr. Milton T. Lasher,* attorney).

*Mr. David S. Baime* argued the cause for respondent (*Messrs. Baime & Baime,* attorneys).

The opinion of the Court was delivered by

FRANCIS, J. The trial judge, sitting without a jury, held that plaintiff was a holder in due course of a note signed by defendants Anthony V. Angelini and Dolores H. Angelini and consequently in this action brought thereon was immune from certain defenses sought to be asserted by them. Therefore, he entered judgment against defendants in the amount of $5363.40 plus interest. The Appellate Division affirmed the judgment in an unreported opinion. We granted defendants' petition for certification. 57 *N. J.* 238 (1970).

On December 10, 1966, defendants Anthony and Dolores Angelini, husband and wife, entered into a contract with Lustro Aluminum Products, Inc. for certain repair work on their home at 689 Clark Ave., Ridgefield, N. J. It provided that Lustro, "a home repair contractor, duly licensed under the New Jersey Home Repair Financing Act, Chapter 41, Laws 1960," would

Supply & Install Gold Bond Plasticrylic Avocado Siding with Grey Sills & Trim. Apply Heavy *Quilted* Breather Foil on all wall areas around complete house. Corner posts to be green, all mullions to be fabricated in grey aluminum. Supply & install 2 anodized storm doors (Rear & Side Entrances). All overhangs & trim to be covered with special Marine Paint in grey color (as close as possible to Oxford grey trim).

This will include cleaning up job.

The cash price for the work was fixed at $3600 but the time payment price was $5363.40, payable in 84 monthly installments of $63.85 each. Payments were to commence "60 days after completion" of the work. The agreement provided also that the Angelinis would "execute a note and application for credit, and any other appropriate instrument for the purpose of financing * * *." On the same date as the contract, they did sign a note in the principal sum of $5363.40 promising to pay that amount to the order of

Lustro in equal consecutive monthly installments of $63.85 each "commencing February 19, 1967, with interest after maturity at the highest rate." According to defendants, at the time they signed the note it was not dated and the date of commencement of payment was not set forth. Anthony Angelini testified that he was told by Lustro's representative that the payments would not begin until he was completely satisfied with the job. The trial court found as a fact that when the note was executed it bore "no dates."

Plaintiff General Investment Corp. is a home improvement contract financier. It deals with 300 contractors and arranges approximately 1800 home improvement loans per year. Approximately 10% of its volume came from Lustro. General Investment's representative testified that the Angelini note was purchased for value from Lustro on the day of its alleged execution, December 19, 1966. It was endorsed without recourse, except that the endorser-contractor warranted as part of the endorsement that it "has furnished and installed all articles and materials and has fully completed all work which constitutes the consideration for which this note was executed and delivered by the maker." When the note was endorsed and delivered by Lustro plaintiff required the home improvement contract to accompany it. The two documents were separate pieces of paper but it was obvious from the contract form that they were interrelated parts of a single transaction. Plaintiff's agent read the contract before discounting the note, and he conceded, in any event, that his experience with the nature of Lustro's operation made him fully familiar with the terms of the contract and the note. Defendants' contract and note to his knowledge were in the form customarily used by Lustro. He said also that in cases involving home improvement notes one of the requisites of the transaction was to obtain a copy of the work contract. Having obtained it as part of the note-discounting event, both documents were kept as part of plaintiff's records. Thus, General Investment knew that under Lustro's method of operation the homeowner's obligation to

commence payments did not come into being until 60 days after the home improvements were completed. It had to know also by inescapable implication that "60 days after completion" were not just words, but that they meant after completion in a workmanlike manner.

When plaintiff's representative received the note and contract and discounted the note, he did not inquire of the Angelinis if the work had been completed prior to or on December 19, the ostensible execution date of the note, nor did he ask Lustro for a certificate of completion signed by defendants. See *N. J. S. A.* 17:16C–66, *L.* 1960, *c.* 41, § 5, which provides that "[n]o home repair contractor shall request or accept a certificate of completion signed by the owner prior to the actual completion of the work to be performed under the home repair contract." This quoted section is part of the Home Repair Financing Act of 1960 under which plaintiff knew Lustro was licensed to do business. *N. J. S. A.* 17:16C–93; 17:16C–77. If a request had been made by General Investment for a certificate of completion, it would have learned immediately that the work had not been completed. Instead plaintiff chose to accept the representation in the printed form of endorsement, appearing on the back of the note and above Lustro's signature, that the work had been "fully completed" in the 10 days between the contract date, December 10, 1966 and December 19, the ostensible but false date of execution of the note.

According to Anthony Angelini's undenied testimony, Lustro began work on his house on December 15. After working on that one day nothing further was done for several days. It never did complete the work and the part performance neither conformed to the contract nor met reasonable workmanlike standards. Ultimately Lustro became insolvent and, according to the Angelinis, the contract was never fulfilled.

The plaintiff's testimony is to the effect that when it discounted the note, the payment commencement date appeared therein as February 19, 1967. As already noted, the

trial court found as a fact that the places for dates thereon were blank at the time of its execution. At any rate, on or about December 24, 1966 the Angelinis received from plaintiff an installment payment coupon book which called for the first payment to be made on February 19, 1967. Defendants promptly returned the book to plaintiff with the advice that the contract called for payments to begin 60 days after completion of the work and that it had not been completed. Defendants also sent a copy of their letter to Lustro. Moreover, it appears that plaintiff wrote Lustro about defendants' complaint stating that it "would appreciate your immediate adjustment of same." This letter was a printed form, thus indicating that plaintiff was prepared for such complaints. In spite of some further correspondence and the Angelinis' assurance that they would begin payments as soon as the work was completed, Lustro failed to perform. Some months later plaintiff filed this suit.

▮▮▮ Plaintiff took the position in the trial court and here that it has the status of a holder in due course of defendants' negotiable note, and as such it is immune from the defense of failure of consideration.[1] A holder in due course is defined in the Uniform Commercial Code, *N. J. S. A.* 12A:3–302 as

"(1) * * * a holder who takes the instrument
(a)  for value; and
(b)  in good faith; and
(c)  without notice * * * of any defense against or claim to it on the part of any person."

---

[1]The Legislature settled this problem for the future by *L.* 1969, *c.* 237, § 2, which provides:

No home repair contract shall require or entail the execution of any note unless such note shall have printed the words 'CONSUMER NOTE' in 10-point bold type or larger on the face thereof. Such a note with the words 'CONSUMER NOTE' printed thereon shall be subject to the terms and conditions of the home repair contract and shall not be a negotiable instrument within the meaning of chapter 3 (Commercial Paper) of the Uniform Commercial Code, N. J. S. 12A:3–101 et seq." *N. J. S. A.* 17:16C–64.2.

If the plaintiff is not such a holder it is subject to the defense of failure of consideration on the part of Lustro. *Unico v. Owen*, 50 *N. J.* 101, 109 (1967).

As we said in *Unico*:

> "In the field of negotiable instruments, good faith is a broad concept. The basic philosophy of the holder in due course status is to encourage free negotiability of commercial paper by removing certain anxieties of one who takes the paper as an innocent purchaser knowing no reason why the paper is not as sound as its face would indicate. It would seem to follow, therefore, that the more the holder knows about the underlying transaction, and particularly the more he controls or participates or becomes involved in it, the less he fits the role of a good faith purchaser for value; the closer his realtionship to the underlying agreement which is the source of the note, the less need there is for giving him the tension-free rights considered necessary in a fast-moving, credit-extending commercial world." *Id.* at 109–110.

Good faith is determined by looking to the mind of the particular holder. New Jersey Study Comment 1B to *N. J. S. A.* 12A:3–302, at p. 134; 12A:1–201(19). The test is neither freedom from negligence in entering into the transaction nor awareness of circumstances calculated to arouse suspicions either as to whether the instrument is subject to some defense not appearing on its face or whether the promise to pay is not as unconditional as it appears therein. *Joseph v. Lesnevich*, 56 *N. J. Super.* 340, 348 (App. Div. 1959). However, evidence of circumstances surrounding the negotiation of the note which excite question as to whether the obligation it represents is really dependent upon performance of some duty by the payee is of probative value if it provides some support for a finding of a bad faith taking by the holder. *Id.* at 348. Of course in evaluating the circumstances, we recognize that the unique policy considerations attendant upon consumer home repair transactions, which are discussed *infra*, require us to closely scrutinize the existence of good faith in these situations. Ordinarily where the note appears to be negotiable in form and regular on its face, the holder is under no duty to inquire as to

possible defenses, such as failure of consideration, unless the circumstances of which he has knowledge rise to the level that the failure to inquire reveals a deliberate desire on his part to evade knowledge because of a belief or fear that investigation would disclose a defense arising from the transaction. *Id.* at 349; *First Nat'l Bank of Blairstown v. Goldberg,* 340 *Pa.* 337, 17 *A.* 2d 377, 379 (1941). And, in this connection, once it appears that a defense exists against the payee, the person claiming the rights of a holder in due course has the burden of establishing that he is in all respects such a holder. *N. J. S. A.* 12A:3-307.

■ In this case, as already noted, plaintiff required that the underlying home improvement contract be submitted with the note at the time it was discounted. Plaintiff therefore knew that the February 19, 1967 date appearing in the note as the date of commencement of the installment payments meant that the owner agreed they were to begin as the contract said, "60 days after completion" of the work. The only sensible meaning of the agreement obviously is that the Angelinis' *liability* to commence payments was dependent upon completion of the improvement in a good and workmanlike manner 60 days prior to February 19. In spite of the substantial nature of the work to be performed under the contract, the fact that the note was being discounted only 10 days after execution of the contract, that the contractor's duty was to complete the work 60 days before the first payment became due, and the knowledge that under the statute, *N. J. S. A.* 17:16C–66, the contractor could obtain from the owner and submit to the finance company a certificate of completion if the work had been completed, plaintiff neither demanded such a certificate nor inquired of the owner as to completion. Instead it chose to accept the contractor's representation in the note endorsement form that he had fulfilled his contractual obligation. Such conduct justifies a strong inference that plaintiff wilfully failed to seek actual knowledge on the subject of completion because of a belief or a fear that an inquiry would

disclose a failure of consideration for the note. Absence of inquiry under the circumstances amounts to an intentional closing of the eyes and mind to any defects in or defenses to the transaction. In our judgment the evidence in its totality and the inferences fairly drawn therefrom establish convincingly that plaintiff did not acquire the note in "good faith" and cannot claim the status of a holder in due course. Consequently it holds the instrument as an assignee and is subject to the defense of failure of consideration. The trial court's holding to the contrary is so opposed to the weight of the evidence as to constitute a manifest injustice.

Under the undisputed facts here there is another statutory ground for refusing the unlimited status of holder in due course to the plaintiff. *N. J. S. A.* 12A:3–119 of the Code provides:

"(1) As between the obligor and his immediate obligee or *any transferee* the terms of an instrument may be modified or affected by any other written agreement executed as part of the same transaction, except that a holder in due course is not affected by any limitation of his rights arising out of the separate written agreement if he had no notice of the limitation when he took the instrument." (Emphasis added.)

Our courts have not yet construed or applied that section. Nor have any pertinent cases in other jurisdictions dealing with it come to our attention. The New Jersey Study Comment in the Annotated Statutes says that our pre-Code "case law is generally in line with" the rule it lays down. New Jersey Study Comment to *N. J. S. A.* 12A:3–119, at p. 77; and see *Unico v. Owen, supra,* 50 *N. J.* at 122.

In *General Contract Purchase Corp. v. Moon Carrier Corp.,* 129 *N. J. L.* 431 (E. & A. 1943) a brokerage firm agreed to obtain a vehicle liability insurance policy covering Moon's trucks for one year for a fee of $4,000. Under a written premium financing agreement Moon paid $800 of the fee immediately and agreed to pay the balance of $3200 in monthly installments of $320 each. It was provided also that Moon would execute 10 promissory notes as collateral

security for the monthly payments. A further clause therein said that in the event of the cancellation of the insurance by the carrier or the broker or the assured, the only remaining obligation of Moon would be to pay the broker the sum due to date. If Moon had overpaid to that date, the broker was obliged to remit any excess. The agreement and the separate notes were transferred to plaintiff General Contract Purchase Corporation. Thereafter the broker went bankrupt and the carrier cancelled the policy. At the time of cancellation Moon's payments exceeded the earned premium to date, but seven of the 10 notes were not yet due. General sued Moon on the notes claiming to be a holder in due course. The Court of Errors and Appeals denied recovery saying that where a note refers to or is accompanied by a collateral contemporaneous agreement which limits the scope of liability on the note, or if the purchaser of the note has actual knowledge of such an agreement even if it neither accompanies the note, nor is referred to therein, he takes it subject to the terms of the agreement.

That holding seems consistent with section 3–119 of the Code. See also *Local Acceptance Company v. Kinkade,* 361 *S. W.* 2d 830 (Mo. Sup. Ct. 1962). We see no intent in the Code, and particularly in section 3–119, to overrule the principle established in *Moon* sofar as consumer goods transactions are concerned. See Rosenthal, "Negotiability — Who Needs It?," 71 *Colum. L. Rev.* 375 (1971).

It is true that the language of the contract which accompanied the notes in *Moon* was somewhat more explicit as to the maker's liability thereon to a holder who had knowledge of the limitation contained in the contract. But here, General Investment Corp. had full knowledge of the method of Lustro's operations and of the form of its notes and home improvement contracts. It demanded and received a copy of the contract with the notes, and no one could doubt from reading the contract in conjunction with the future first payment date set out in the note that the homeowner's liability was not intended to begin until 60 days

after the work was properly completed. Accordingly, we hold that plaintiff took defendants' note subject to that limitation which was plainly spelled out in the two instruments. Therefore it took the note subject to the defense of failure of consideration. The evidence being uncontradicted that the work was not completed, the trial court should not have entered judgment in favor of plaintiff.

As we have indicated above, the scope of *N. J. S. A.* 12A:3–119 of the Code has not yet received definitive judicial interpretation or application. Although consideration of the Code as a whole invites the conclusion that in commercial transactions it is generally negotiability-oriented, it does recognize that courts and legislatures may find and fill a need for certain less stringent rules as to enforceability of commercial paper arising out of consumer goods transactions. See *N. J. S. A.* 12A:9–206 with respect to establishment of a different rule as to waiver of defenses in consumer goods transactions; and see Uniform Commercial Code Comment 2 to *N. J. S. A.* 12A:9–206, at p. 396.[2]

By the 1960 Home Repair Financing Act, *N. J. S. A.* 17:16C–62, *et seq., supra,* the Legislature indicated its awareness of oppressive and unconscionable tactics that were being practiced by untrustworthy contractors, and it undertook to provide some protection for homeowners who entered into installment payment contracts for home repairs or improvements. "Goods" were defined to include materials furnished or used in the performance of such con-

---

[2]*N. J. S. A.* 12A:9–206 provides:

"(1) Subject to any statute or decision which establishes a different rule for buyers of consumer goods, an agreement by a buyer that he will not assert against an assignee any claim or defense which he may have against the seller is enforceable by an assignee who takes his assignment for value, in good faith and without notice of a claim or defense, except as to defenses of a type which may be asserted against a holder in due course of a negotiable instrument * * *. A buyer who as part of one transaction signs both a negotiable instrument and a security agreement makes such an agreement."

See *Unico v. Owen, supra,* 50 *N. J.* at 124–125.

tracts. "Home repair contract" was declared to be "an agreement, whether contained in one or more documents, between a home repair contractor and an owner to pay the time sales price of goods and related services in installments over a period of time greater than 90 days." *L*. 1960, *c*. 41, § 1(c) ; *N. J. S. A*. 17:16C–62(c). Included also were prohibitions against certain acceleration of payment clauses in such contracts and against provisions for powers of attorney to confess judgment, or for assignment of wages, or for the waiver of any claim the homeowner may have against the contractor. *N. J. S. A*. 17:16C–64. Continued and increased legislative purpose to protect consumer-homeowners from being victimized by irresponsible contractors was shown by the 1969 supplement to the Home Repair Financing Act, *L*. 1969, *c*. 237; *N. J. S. A*. 17:16C–64.1 *et seq*. Among other things, it was made unlawful for any home repair contract to contain "any provision relieving the holder, or other assignee, from liability for any civil remedy sounding in contract which the owner may have against the home repair contractor under the home repair contract on under any separate instrument executed in connection therewith." *N. J. S. A*. 17:16C–64.1. In addition, as noted in footnote 1, *supra,* the statute declared that any note given to the contractor by the homeowner under such a contract "shall not be a negotiable instrument within the meaning" of the Uniform Commercial Code. *N. J. S. A*. 17:16C–64.2. Mention is made of the 1960 and 1969 legislation not to indicate that either act directly controls the present case. They are mentioned for such aid as they may furnish the Court in reaching a proper interpretation of *N. J. S. A*. 12A:3–119. See *Williams v. Walker-Thomas Furniture Company,* 121 *U. S. App. D. C*. 315, 350 *F*. 2d 445, 449 (1965).

The cited statutes reveal a strong purpose to protect the homeowner, who signs a repair contract secured by installment payment notes, from the unjust loss that sometimes falls on the maker of a negotiable note when it finds its way into the hands of a holder in due course. In our view,

that purpose imposes upon a court an obligation to construe the language of *N. J. S. A.* 12A:3–119 liberally in favor of the homeowner-note maker. So construed in this case, we hold that *N. J. S. A.* 12A:3–119 signifies that since the plaintiff had notice that defendants' obligation to pay their note did not come into being until 60 days after Lustro completed the repair work in a workmanlike manner, it is subject to the defense of failure of consideration. See *N. J. S. A.* 12A:1–201(25).

We are not dealing with the usual commercial transaction involving an installment payment contract secured by a negotiable note. Our holding is limited to the home repair type of consumer goods and services installment payment contract and note containing a condition of the nature involved here on the maker's liability, which condition was brought home to and was accepted by the holder when he discounted the note.

The judgment is reversed. Since plaintiff relied entirely upon its alleged status as a holder in due course, and, therefore, offered no proof on defendants' claim of lack of completion of Lustro's work, the cause is remanded for a plenary trial on that issue.

WEINTRAUB, C. J., and HALL, J., concur in result.

*For reversal and remandment*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—6.

*For affirmance*—None.