425 S.E.2d 829

**ONE VALLEY BANK OF OAK HILL, INC., a Corporation, Plaintiff,**

v.

**Robert T. BOLEN, Sr. and Judith G. Bolen, His Wife, Defendants.**

**No. 21266.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 16, 1992.

Decided Dec. 16, 1992.

Dana F. Eddy, Charleston, James C. Blankenship, III, Fayetteville, and Vincent P. Cardi, Morgantown, for plaintiff.

D. Clinton Gallaher, IV, Fayetteville, for defendants.

NEELY, Justice:

The Circuit Court of Fayette County asks us to determine to what extent an assignee of a note is liable to the payor of that note for a fraud committed by the assignor (original payee). Specifically addressed in this certified question is the way the West Virginia Consumer Credit and Protection Act affects the general holder in due course rules. At issue is the ready availability of credit to consumers.

I.

On 12 September 1988, Robert Bolen, Sr., and Judith Bolen, defendants/counterclaimants in this action, purchased a used 1988 Cadillac DeVille from Derald Rollyson, Inc. for $22,900. The Bolens made a cash down payment of $2,889.77, received $1,583.24 as trade-in for their Cadillac El Dorado, and financed the rest of the purchase price. The Bolens promised to pay 60 monthly installments of $486.36, which is the remainder of the purchase price financed at an annual interest rate of 10.9 percent.

Allegedly, the DeVille was described by the salesman as a "factory official" car. On 16 May 1989, the Bolens assert that they discovered that, in fact, the car had been owned by Hertz and used as a rental car in Florida from February through June of 1988. The Bolens claim that this was a

material difference and they would not have bought the car had they known it had been a rental car.

On the same day the car was sold, Derald Rollyson, Inc., sold the Bolen's credit obligation to One Valley Bank of Oak Hill (Bank). Bank received Rollyson's formal written assignment of its rights, title and interest under that credit agreement. When the Bolens discovered the alleged fraud, they stopped making payments on the note. Bank then brought suit to repossess the DeVille and to establish what amount remained on the obligation after the repossession. The Bolens countersued Bank, asking for the damages they suffered as a result of the alleged fraud on the part of the Bank.

▇ To help resolve this claim, the Circuit Court of Fayette County certified the following questions:

1. Does West Virginia Code 46A–2–102 limit the amount of compensatory or punitive damages that a consumer may recover from an assignee that holds an instrument, contract or writing that was induced by fraud on the part of the seller occurring *prior* to July 1, 1990? [emphasis original]

2. If the provisions of West Virginia Code 46A–2–102 allow a consumer to recover damages from an assignee that exceed the amounts paid by that consumer with respect to the consumers credit obligation, are these provisions:

  a. Preempted by the FTC Notice of Claims and Defenses Regulation (16 C.F.R. 433.2); or

  b. In violation of the West Virginia or United States Constitutions.

## II.

Credit, for better or worse, is the lifeblood of our consumer economy. The need to make credit more readily available was a driving force behind the creation of the *Uniform Commercial Code*[1] as well as the great strides made earlier by Lord Mansfield at the end of the 18th century and transplanted wholesale into our law in the 19th century. The ability of negotiable commercial paper to flow nationwide without regard to local conditions allows all business, no matter how small or remote, access to nationwide capital markets. The main reason for this free flow of commercial paper is the "holder in due course" provisions contained in *W.Va.Code* 46–3–305 [1963] that permit a purchaser who, in good faith, purchases a negotiable instrument and gives value for it without notice of any defense against it or claim to the instrument, to take the instrument free from virtually all defenses.[2]

Although this rule worked well to increase available credit, it also created some harsh results. Consumers, it was discovered, lacked adequate bargaining power to protect themselves from slick operators in the retail business. For example, a woman might buy a television set on credit from Slick Willie's Appliance Shoppe and sign a promissory note for the balance. (If she had cash she'd be dealing with Sears!) After the woman gets home and plugs in the television, the set blows up. Furious, she may bring the television set back to Slick Willie's the next day only to find that Willie has assigned her note to the Last National Bank and headed for Rio. The bank, as holder of the note, could still demand payment on the note, and the woman would be obligated to pay. Meanwhile, Slick Willie has gone underground and cannot be

---

**1.** The Legislature adopted the *Uniform Commercial Code* as Chapter 46 of the *W.Va.Code* [1963].

**2.** A "holder" is a person who is in possession of a financial instrument made to his order, or in blank. *W.Va.Code* 46–1–201 [1979]. If a "holder" takes that note for value, in good faith, without notice that it is overdue or has been dishonored or of any defense against it or claim to it on the part of any person, then the holder is a "holder in due course". *W.Va.Code* 46–3–

302 [1963]. If one is a holder in due course, then implicitly one has no knowledge of any claims arising from the instrument or defenses against the collection under that instrument. Once a holder is, in fact, a holder in due course, the only valid defenses against him are: infancy, incapacity, duress, illegality of the transaction, fraud in the factum, or a bankruptcy discharge on the part of the maker. *W.Va.Code* 46–3–305 [1963].

found. Now the consumer has no television, no useful cause of action, but the consumer is still liable to pay for the television.

Indeed, this very scenario occurred frequently in door-to-door sales transactions, most notoriously the sale of storm windows, storm doors and aluminum siding. Thus, by the early 1970's, the Supreme Court of New Jersey began to look behind the claim of holder in due course status to determine whether a bank was actually part of the scheme. In *General Investment Corp. v. Angelini*, 58 N.J. 396, 278 A.2d 193 (1971), the New Jersey court found that the "good faith" requirement to be a holder in due course has a significant meaning:

> In the field of negotiable instruments, good faith is a broad concept. The basic philosophy of the holder in due course status is to encourage free negotiability of commercial paper by removing certain anxieties of one who takes the paper as an innocent purchaser knowing no reason why the paper is not as sound as its face would indicate. It would follow, therefore, that *the more the holder knows about the underlying transaction, and particularly the more he controls or participates or becomes involved in it, the less he fits the role of a good faith purchaser for value; the closer his realtionship [sic] to the underlying agreement which is the source of the note, the less need there is for giving him the tension-free rights considered necessary in a fast-moving, credit-extending commercial world.* (quoting *Unico v. Owen*, 50 N.J. 101, 109 [232 A.2d 405] (1967)) [Emphasis added]

*General Investment*, 58 N.J. at 403, 278 A.2d at 196. As the New Jersey Supreme Court was taking this approach toward banks that tried to hide behind the holder in due course doctrine, the court noted that the New Jersey Legislature had taken steps to prevent the continuation of this problem:

> The Legislature settled this problem for the future by *L.*1969, *c.* 237, § 2, which provides:

> "No home repair contract shall require or entail the execution of any note unless such note shall have printed the words 'CONSUMER NOTE' in 10–point bold type or larger on the face thereof. Such a note with the words 'CONSUMER NOTE' printed thereon shall be subject to the terms and conditions of the home repair contract and shall not be a negotiable instrument within the meaning of chapter 3 (Commercial Paper) of the Uniform Commercial Code, N.J.S. 12A:3–101 *et seq.*" *N.J.S.A.* 17:16C–64.2

New Jersey stripped all notes based on underlying home repair contracts of their holder in due course status in order to protect consumers from this unfair situation. Similarly, the West Virginia Legislature, looking to mitigate the harshness of the holder in due course rules on consumers, enacted the West Virginia Consumer Credit and Protection Act. *W.Va.Code* Chap. 46A [1974]. *See Clendenin Lumber and Supply Com. v. Carpenter*, 172 W.Va. 375, 379–380, 305 S.E.2d 332, 336–337 (1983).

Part of the West Virginia Legislature's plan for mitigating the harsh effects of the *UCC* also included stripping assignees of consumer commercial paper of most of the benefits of being holders in due course, although the West Virginia statute was far more comprehensive than the early New Jersey statute quoted above. *W.Va.Code* 46A–2–102(5) [1974] provided:

> The following provisions shall be applicable to instruments, contracts or other writings, other than negotiable instruments, evidencing an obligation arising from a consumer credit sale or consumer lease, other than a sale or lease primarily for an agricultural purpose ...: Notwithstanding any term or agreement to the contrary or the provisions of article two [§ 46–2–101 et seq.], chapter forty-six of this code or section two hundred six [§ 46–9–206], article nine, of said chapter forty-six, *an assignee of any such instrument, contract or other writing shall take and hold such instrument, contract or other writing subject to all claims and defenses of the buyer or lessee against the seller or*

*lessor arising from that specific consumer credit sale or consumer lease of goods or services, but the total of all claims and defenses which may be asserted against the assignee under this subsection or subsection (7) of this section shall not exceed the amount owing to the assignee at the time of such assignment, except (i) as to any claim or defense founded in fraud and (ii) for any excess charges and penalties recoverable under section one hundred one [§ 46A-5-101], article five of this chapter.* [Emphasis added]

In 1990, the Legislature renumbered this section and added a provision that clearly expresses a limitation on the amount of recovery:

Provided, That as to any claim or defense founded in fraud arising on or after the first day of July, one thousand nine hundred and ninety, the total sought shall not exceed the amount of the original obligation under the instrument, contract or other writing.

*W.Va.Code* 46A-2-102(1) [1990]. The Bolens argue that we can infer from the adoption of this amendment that there was no limitation on the amount that could be recovered from an assignee before the amendment was passed. The Bank maintains that this provision was just a clarification to remedy an ambiguity in the *Code*.

We do not agree with either interpretation of the action the Legislature took in 1990. Admittedly, neither W.Va.Code, 46A-2-102(5) [1974], nor any of its counterparts nor the definitions contained in W.Va. Code, 46A-1-102, provided any definition of the term "fraud." However, W.Va. Code, 46A-2-121 [1974], expressly deals with conduct that is "unconscionable" which we have equated with fraudulent conduct.[3] *See, e.g., Orlando v. Finance One of W.Va., Inc.,* 179 W.Va. 447, 369 S.E.2d 882 (1988); *United States Life Credit Corp. v. Wilson,* 171 W.Va. 538, 301 S.E.2d 169 (1982).

This is reinforced by W.Va.Code, 46A-5-101 [1974], which outlines the types of additional damages that may be recovered for various violations of Chapter 46A, and specifies "illegal, fraudulent or unconscionable conduct (§ 46A-2-121)[.]"[4] This section goes on to provide: "[T]he consumer has a cause of action to recover actual damages and in addition a right in an action to recover from the person violating this chapter a penalty in an amount determined by the court not less than one hundred dollars nor more than one thousand dollars."

■ Thus, while W.Va.Code, 46A-2-102(5) [1974], allows the consumer to recover an amount not to "exceed the amount owing to the assignee at the time of such assignment," its exception for an additional

---

3. The relevant portion of W.Va.Code, 46A-2-121 [1974], states:

"(1) With respect to a transaction which is or gives rise to a consumer credit sale or consumer loan, if the court as a matter of law finds:

"(a) The agreement or transaction to have been unconscionable at the time it was made, or to have been induced by unconscionable conduct, the court may refuse to enforce the agreement[.]"

4. The relevant provisions of W.Va.Code, 46A-5-101 [1974], is:

"If a creditor has violated the provisions of this chapter applying to collection of excess charges (§ 46A-1-104), security in sales and leases (§ 46A-2-107), disclosure with respect to consumer leases (§ 46A-2-111), receipts, statements of account and evidences of payment (§ 46A-2-114), limitations on default charges (§ 46A-2-115), assignment of earn-

ings (§ 46A-2-116), authorizations to confess judgment (§ 46A-2-117), illegal, fraudulent or unconscionable conduct (§ 46A-2-121), any prohibited debt collection practice (§§ 46A-2-123 through 46A-2-129), or restrictions on interest in land as security, assignment of earnings to supervised lender, security agreement on household furniture for benefit of supervised lender, and renegotiation by supervised lender of loan discharged in bankruptcy (§ 46A-4-109), the consumer has a cause of action to recover actual damages and in addition a right in an action to recover from the person violating this chapter a penalty in an amount determined by the court not less than one hundred dollars nor more than one thousand dollars."

While the term "creditor" is used, we believe this is applicable to the creditor's assignee since there is no suggestion that the latter should be punished more severely than the original creditor.

amount because of fraud is controlled by W.Va.Code, 46A–5–101 [1974]. As we have seen under this latter section, the additional damages for fraud or unconscionable conduct are limited to actual damages and, if the court so determines, a penalty of not less than one hundred nor more than one thousand dollars. Consequently, punitive damages are not available under the fraud or unconscionable conduct provisions of W.Va.Code, 46A–2–121 [1974], and W.Va. Code, 46A–2–102(5) [1974].

With this understanding of the damages available under the 1974 provisions, it is apparent that the 1990 legislative revision holding fraud to "the total sought shall not exceed the amount of the original obligation" is designed further to limit recovery. This section now precludes the recovery of any actual damages and the penalty.

Therefore the answer to the first certified question is that *W. Va. Code* 46A–2–102 does limit the amount of damages available to be recovered. This answer thereby renders the second certified question moot.

Accordingly, the certified question having been answered, this case is ordered dismissed from the docket of this Court.

Certified question answered.