**Abbe B. HAYS, Plaintiff,**

v.

**BANKERS TRUST COMPANY OF CALIFORNIA, et al., Defendants.**

**No. Civ.A. 2:98–0338.**

United States District Court, S.D. West Virginia, Charleston Division.

April 19, 1999.

Bruce Perrone—Legal Aid Society of Charleston, Charleston, WV, James T. Sugarman—Mountain State Justice, Inc., Charleston, WV, for plaintiff.

R. Vance Golden, III, Parkersburg, WV, for Bankers Trust and Advanta, defendant.

W. Michael Moore, Rita Massie Biser, Kay, Casto & Chaney PLLC, Charleston, WV, for United Companies, defendant.

J. Tyler Dinsmore, Flaherty, Sensabaugh & Bonasso, Charleston, WV, for Finance America and Vanguard, defendant.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending are (1) Plaintiff's motion to amend the Complaint and (2) Defendants Bankers Trust Company of California ("Bankers Trust") and Advanta Mortgage Corporation's ("Advanta's") motions for summary judgment.[1] The motion has been fully briefed and is ripe for disposition. For reasons discussed more fully below, the Court **GRANTS** Plaintiff's motion to amend and **GRANTS** in part and **DENIES** in part Defendants' motion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Abbe Hays is a single mother who lives with her three children in the home she inherited from her grandfather in 1988. She and her husband obtained a conventional home equity loan to finance renovations, including adding bedrooms and a bathroom. Ms. Hays' husband left her, reducing the family income, while the renovations were incomplete, the original loan proceeds were depleted, and the loan unpaid. Hays sought an additional small loan from Defendant United Companies Lending Corporation ("UCLC") to install siding to cover the exposed framing and walls. Hays alleges she was induced by UCLC, through a series of misrepresentations, ultimately to take a larger loan than she wished.

The loan agreement that Hays executed with UCLC on August 27, 1994 ("1994 loan") was for $45,500 at an interest rate of 13.75 percent and included several large fees to UCLC. Within three days of learning the terms of the loan, Hays signed a rescission document and brought it to UCLC's office. UCLC's agent Rick Miller refused to accept the rescission. Miller, however, assured Hays that if she made all payments on time for one year, the loan would be refinanced at a significantly lower rate. After one year, and having made

1. Defendants' motion is titled a motion to dismiss complaint and for summary judgment. Defendants' Answer to Plaintiff's amended complaint was filed in July, 1998. A motion to dismiss pursuant to *Rule* 12(b)(6) is, therefore, untimely. Fed.R.Civ.P. 12(b)(6). With their motion Defendants filed a 17 page supporting brief and a 10 page affidavit ("Aff.") by William P. Garland, senior vice president of Advanta, which is actually more like a brief than a true affidavit. (Thereafter, the Court granted Plaintiff's motion to extend the page limit for her response.) Defendants' pair of briefs address only summary judgment. Accordingly, the Court considers Defendants' motion as requesting only summary judgment.

timely payments, Hays took the twelfth payment to the UCLC office. Miller took the payment and told Hays he would hold it because he was going to refinance her loan at a lower rate with lower payments; however, the loan was not refinanced and two months later, Miller told Hays it would not be refinanced.[2]

Hays was then contacted via mail by Vanguard Mortgage Group ("Vanguard")[3] offering to refinance her loan at a significantly lower interest rate. Hays completed a loan application including an "origination fee agreement" in which she agreed to pay Vanguard a "finders fee" in the amount of 7.5% of the future loan amount. Vanguard sent Hays an "Initial Financing Agreement" for an estimated loan amount of $57,600 at 9.7% on a conventional 30–year mortgage. Vanguard notified Hays her loan had been approved and she should go to a law office in Charleston for closing. The documents presented to Hays at closing included a "Financing Agreement" for a 30–year fixed rate conventional mortgage, but the interest rate was given as 10.65%. The document stated these terms were " 'locked in' " until January 11, 1996.

The actual loan terms presented to Hays at the closing on January 3, 1996, however, were quite different. The creditor was not Vanguard but Finance America Corporation ("Finance America"),[4] the term was 180 months, and the payment schedule included 179 payments of $533.36 and a balloon payment of $48,380.51. Hays avers in her affidavit accompanying her Response to this motion she only learned at closing the note was a balloon note. "I had no idea what a balloon note was and I asked the lawyer what the title 'Balloon Note' meant. He told me 'don't worry they all have that now.' " Pl.'s Resp., Ex. A. Hays signed the note borrowing $57,600 from Finance America on January 3, 1996 ("1996 loan").[5]

On the date of closing, January 3, 1996, Hays' note was assigned to City Federal Funding and Mortgage ("City Federal") and thence on the same date to Defendant Bankers Trust. Defs.' Br. in Support Summ.J. ("Defs.' Br."), Ex. 17, 19.

Hays fell behind on her payments. She received letters dated August 14 and 19, 1997 from Defendant Advanta Mortgage Corporation ("Advanta") instructing her to call its representative Tod Stewart to verify amounts necessary to reinstate the loan. When she called, Tod Stewart told her to send $3,158.54 by September 20, 1997 to reinstate the loan. Hays did so. That amount was returned by another Advanta employee in a letter dated September 30, 1997 which stated it was insufficient to reinstate the loan. A later letter from Advanta stated the amount required to reinstate was $5,015.97.

In January, 1998 Hays was contacted by Defendant Banker's Trust's counsel stat-

2. UCLC filed for Chapter 11 bankruptcy with the United States Bankruptcy Court for the District of Delaware, filed as Case No. 99–453. Pursuant to the automatic stay provisions of 11 U.S.C. § 362(a)(1), insofar as this action involves claims against UCLC involving the 1994 loan, and absent an order of the Bankruptcy Court lifting the stay, Plaintiff's claims against UCLC are stayed.

 Defendant Bankers Trust was also the Trustee on the 1994 loan.

3. Apparently Vanguard is now defunct. See letter from the Maryland Department of Labor, Licensing and Regulation. Pl.'s Resp. Defs.' Mot.Summ.J. ("Pl.'s Resp."), Ex. F. Oddly, this letter is addressed to Vanguard Mortgage Group and reports: "in reference to your inquiry concerning Vanguard Mortgage Group ... on July 8, 1997 the company sent in notification informing this agency that the company was closing and surrendered the above mentioned licenses." Id.

4. Plaintiff reports a principal of Finance America contacted her counsel claiming that the company had been dissolved, but that no documents to that effect have been produced and Maryland corporate records do not reflect Finance America's dissolution. Pl.'s Resp. at 9, n. 1.

5. The 1996 loan paid off the 1994 loan. Aff., Ex. 2.

ing that her house had been sold,[6] there was a default judgment against her, and she had to move out of her home in eight days. Banker's Trust obtained a default eviction in Kanawha County Magistrate Court, which was set aside for failure to actually serve Hays. The eviction action was removed by Hays and subsequently dismissed by the Circuit Court of Kanawha County.

On March 18, 1997 Hays brought this civil action alleging common law claims,[7] violations of the West Virginia Consumer Credit and Protection Act ("WVCCPA"), W.Va.Code §§ 46A–1–101 *et seq.*, and violations of the federal Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 *et seq.*, the Home Ownership and Equity Protection Act ("HOEPA"), largely codified at 15 U.S.C. § 1639, and the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 3801 *et seq.*

Defendants Bankers Trust and Advanta ("Movants") have moved for summary judgment arguing (1) their status as holders in due course insulates them from Hays' claims; (2) they are not participants in a civil conspiracy; (3) the loan documents on their face reveal no federal violations; (4) although they do not contest Hays' equitable right of redemption, her failure to tender reinstatement is fatal to her case as a matter of law; and (5) punitive damages are not available under the WVCCPA, even if Movants had performed any unconscionable or fraudulent acts, which they deny. The Court will address these arguments in order.

## II. ARGUMENT

### A. *Plaintiff's Motion to Amend Complaint*

■■■ Plaintiff moved to amend her Complaint on January 6, 1999. No response has been filed by any defendant.

Disposition of a motion to amend is within the sound discretion of the district court. *Deasy v. Hill*, 833 F.2d 38, 40 (4th Cir. 1987). While *Fed.R.Civ.P.* 15(a) states that leave shall be freely given when justice so requires, a motion to amend may be denied where allowing the amendment would unduly prejudice the non-movant. *Deasy*, 833 F.2d at 40. By failing to respond, Defendants have failed to identify any potential prejudice to them from Plaintiff's amendment. Accordingly, the Court **GRANTS** Plaintiff's motion to amend her Complaint.

### B. *Defendants' Motion for Summary Judgment*

#### 1. Summary Judgment Standard

Our Court of Appeals has often stated the settled standard and shifting burdens governing the disposition of a motion for summary judgment:

> Rule 56(c) requires that the district court enter judgment against a party who, "after adequate time for ... discovery fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," To prevail on a motion for summary judgment, the [movant] must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) it is entitled to judgment as a matter of law. In determining whether a genuine issue of material fact has been raised, we must construe all inferences in favor of the [nonmovant]. If, however, "the evidence is so one-sided that one party must prevail as a matter of law," we must affirm the grant of summary judgment in that party's favor. The [nonmovant] "cannot create a genuine issue of fact through mere speculation or

---

6. Legal notice of the trustee sale was published October 7 through 14, 1997 and the foreclosure sale was held October 21, 1997, the property being sold to Defendant Bankers Trust Company.

7. Hays alleges breach of contract, breach of the covenant of good faith and fair dealing, civil conspiracy, and breach of fiduciary duty.

the building of one inference upon another," To survive [the motion], the [nonmovant] may not rest on [his] pleadings, but must demonstrate that specific, material facts exist that give rise to a genuine issue. As the *Anderson* Court explained, the "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff[.]" *Harleysville Mut. Ins. Co. v. Packer,* 60 F.3d 1116, 1119–20 (4th Cir.1995) (citations omitted); *Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir.), cert. denied, 513 U.S. 813, 115 S.Ct. 67, 68, 130 L.Ed.2d 24 (1994); *see also Cabro Foods, Inc. v. Wells Fargo Armored Service Corp.,* 962 F.Supp. 75, 77 (S.D.W.Va.1997); *Spradling v. Blackburn,* 919 F.Supp. 969, 974 (S.D.W.Va.1996).

"At bottom, the district court must determine whether the party opposing the motion for summary judgment has presented genuinely disputed facts which remain to be tried. If not, the district court may resolve the legal questions between the parties as a matter of law and enter judgment accordingly." *Thompson Everett, Inc. v. National Cable Advertising, L.P.,* 57 F.3d 1317, 1323 (4th Cir.1995).

## 2. Holder in Due Course Status (Assignee Liability)

■■■ "A 'holder' is a person who is in possession of a financial instrument made to his order, or in blank." *One Valley Bank of Oak Hill, Inc. v. Bolen,* 188 W.Va. 687, 689 n. 2, 425 S.E.2d 829, 831 n. 2 (1992) (*citing* W.Va.Code § 46–1–201 (1979)). If a holder takes that note for value, in good faith, without notice that it is overdue or has been dishonored or of any defense against it or claim to it on the part of any person, then the holder is a

holder in due course ("HDC"). W.Va. Code § 46–3–302 (1963). If one is an HDC, then implicitly one has no knowledge of any claims arising from the instrument or defenses against the collection under that instrument. Once a holder is, in fact, an HDC, the only valid defenses against the HDC are: infancy, incapacity, duress, illegality of the transaction, fraud in the factum, or a bankruptcy discharge on the part of the maker. W.Va.Code § 46–3–305.

■■ Movants assert they are HDCs, who therefore took Hays' note free from all claims asserted in this civil action. The initial inquiry must be whether Movants are holders. Bankers Trust was assigned Plaintiff's mortgage note on January 3, 1996. Defs.' Br., Ex. 19. As assignee, Bankers Trust is a holder.

■■ Advanta's status in this complicated credit transaction is less clear. The first assignment of the 1996 loan, from Finance America to City Federal, is marked "Record and Return to: Advanta Mortgage Corp." [8] Advanta's role in that transaction is unclear. Advanta also acted as the collection agent on this mortgage. All of the correspondence with Hays about default and foreclosure was from Advanta and Hays was instructed to communicate with Advanta about reinstatement. A letter to Hays from counsel for Movants, identifying himself as Trustee under the Deed of Trust and enclosing the Notice of Trustee Sale, identifies the *creditor* as Advanta Mortgage Corporation.[9] Defendants' Affidavit explains that "*mortgage lenders* such as [UCLC] and Advanta originate or purchase loans and service the loans and place the loans in pooling agreements with Bankers Trust." Aff. at 4 (emphasis added).

---

**8.** The assignment from City Federal to Bankers Trust is not so marked. This raises a question about the relation of Advanta to City Federal, and perhaps to Finance America.

**9.** Interestingly, this letter, although undated, must have been sent after October 7, 1998

since it purports to enclose a Notice of the Trustee Sale first printed on that date. This letter states the approximate amount of reinstatement as $3,361.87. More than a week before, Advanta had returned $3,158.54 as insufficient.

To further elucidate the relation between Advanta and Bankers Trust, Defendants provide a 134 page, single-spaced Pooling and Servicing Agreement to which Advanta Mortgage Conduit Services, Inc. is also a party. Aff., Ex. 1. The Agreement creates a mortgage loan trust with Bankers Trust as Trustee and Advanta as "Master Servicer." Defendants assert the 1996 loan "was one of many loans placed in a pool of loans by Advanta and serviced pursuant to [this] Pooling and Servicing Agreement." Aff. at 2. None of this explains how Advanta ostensibly came to control the loan. The loan was never assigned to Advanta; the last recorded assignment is to Bankers Trust. Accordingly, the Court finds and concludes that on the record now before it, Advanta is not and was never a holder of this loan, and therefore is no candidate for HDC status with its attendant protections.[10]

As concluded above, Bankers Trust is a holder, but to claim HDC status, Bankers Trust must show it took the note in good faith with no knowledge of any claims arising from the instrument or defenses against the collection under that instrument. TILA and HOEPA violations apparent on the face of the documents evidencing Hays' 1996 loan transaction are sufficient to put Bankers Trust on notice of the note's infirmities.[11]

Further, Bankers Trust has a contractual relation with Advanta under which Advanta is the Master Servicer of a pool of loans, including Hays' loan, which Bankers Trust asserts was pooled by Advanta. Advanta is also identified by Movants as the creditor and the mortgage lender on this loan. No documentation, however, supports this claim or reveals how Advanta came by Hays' loan, if it did. In addition, Advanta may or may not have some relation with the momentary intermediary, City Federal, or the fly-by-night Finance America, which dealt with fly-by-night mortgage broker Vanguard. The record is simply too tangled for the Court to conclude, without more, that Bankers Trust had no knowledge of, or complicity in, the wrongs Hays asserts were perpetrated by the rest of the Defendants in this civil action prior to its acquisition of the note. Accordingly, the Court **DENIES** Movants' motion for summary judgment based on HDC status.[12]

### 3. Civil Conspiracy

At its most fundamental level, a "civil conspiracy" is "a combination to commit a tort." *Kessel v. Leavitt*, 511 S.E.2d 720, 753 (W.Va.1998) (citations omitted). A civil conspiracy is a combination of two or more persons by concerted action to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, by unlawful means. The cause of action is not created by the conspiracy but by the wrongful acts done by the defendants to the injury of the plaintiff. *Dixon v. American Indus. Leasing Co.*, 162 W.Va. 832, 834, 253 S.E.2d 150, 152 (1979). Given the tort-based liability of participants in a civil conspiracy, a plaintiff can maintain such a claim provided he/she satisfies the enumerated standard: "In order for civil conspiracy to be actionable it must be proved that the defendants have committed some wrongful act or have committed a lawful act in an unlawful manner to the injury of the plaintiff[.]" *Kessel*, 511 S.E.2d at 754 (citations

10. Advanta was also the party which, allegedly, wrongfully refused Hays' tender of the correct amount for reinstatement in breach of contract. In this transaction, Advanta apparently acted as the "Master Servicer" for Bankers Trust. HDC protections would not extend to wrongs perpetrated by Defendants as principal or agent. Accordingly, summary judgment is inappropriate on all such counts without reference to HDC defenses.

11. See discussion *infra* at II.B.3 and II.B.4.

12. Being unable to determine on the record now before it whether Advanta is a holder and whether Bankers Trust is an HDC, the Court does not reach the issue of whether Movants are stripped of the HDC defense under the WVCCPA.

omitted). Additionally, individuals who have conspired with one another to orchestrate and/or carry out a fraudulent plan or scheme can be held liable for their conduct. *Id.* citing 37 Am.Jur.2d Fraud and Deceit § 301, at 397 (1968) (stating "everyone who engages in a fraudulent scheme forfeits all right to protection, either at law or in equity"); 37 Am.Jur.2d Fraud and Deceit § 305, at 403 & 405 (1968) (noting that "[o]ne who participates in a fraud is of course guilty of fraud, and one who, with knowledge of the facts, assists another in the perpetration of a fraud is equally guilty" (footnotes omitted)). *See* also *Frazer v. Brewer*, 52 W.Va. 306, 310, 43 S.E. 110, 111 (1903) ("He who adopts the results adopts also the means by which they are brought about.").

Movants assert that neither of them played any part in the initiation or arrangement of these loans and "no loan has ever been purchased by the Movants knowing that it was made improperly or fraudulently." Defs.' Br. at 4. Advanta asserts it has compliance procedures in effect and will not knowingly purchase any loan which is the subject of fraudulent representations. Aff. at 6.

 Among the closing documents [13] are a Loan Commitment, undated, in which Finance America agrees to loan Hays $57,600 at 10.65% for 360 months and a Financing Agreement ("FA") which promises "You have 'locked in' your loan, the terms shown above will be honored by Finance America Corporation until the indicated expiration date." The FA expiration date was January 11, 1996, eight days after Hays' closing, and the mortgage terms were a fixed-rate, 30 year mortgage at 10.65%. In contradistinction, also among those documents is a Notice of Approval: "We are pleased to inform you that your application for the following type of loan has been approved: Repayment term 180 months; Payments: 179 at 533.35, *Balloon payment of $48,380.51.*" (Emphasis added.) This Notice of Approval indicates it was "hand delivered to Borrower(s) on 01/03/96," i.e., at the closing, in clear violation of 15 U.S.C. § 1639(b)(1), which requires disclosure of the terms of covered loans [14] "not less than 3 business days prior to consummation of the transaction" and also provides that "after providing these required disclosures, *a creditor may not change the terms of the extension of credit* if such changes make the disclosures inaccurate." 15 U.S.C. § 1639(b)(2)(A).

 The "bait and switch" tactic used to obtain Hays' loan commitment is apparent on the face of the loan documents. It evidences fraudulent misrepresentations sufficient to preclude summary judgment

13. Movants agree that the documents provided by Plaintiff as having been presented to her at closing of the 1996 loan duplicate the signed documents in Movants' loan file. Defs. Br. at 2.

14. Movants dispute that Hays' loan is a covered loan as defined in 15 U.S.C. § 1602(aa). Mortgages covered under Title 15, section 1639 (HOEPA) are defined at section 1602(aa), which provides

"A mortgage referred to in this subsection means a consumer credit transaction that is secured by the consumer's principal dwelling ... if

. . . . .

(B) the total points and fees payable by the consumer at or before closing will exceed the greater of—
(i) 8 percent of the total loan amount; or

(ii) $400.
15 U.S.C. § 1602(aa)(1).
Points and fees includes "all compensation paid to mortgage brokers." 15 U.S.C. § 1602(aa)(4)(B).

The total loan amount is calculated by taking the amount financed, in this case $57,600, and deducting points and fees. Hay's 1996 loan included a mortgage broker fee paid to Vanguard of $4,320. The total loan amount is thus $53,280. Considering the mortgage broker's fee alone, the points and fees exceed 8 percent. Accordingly, this loan is HOEPA-covered and all provisions of Title 15, section 1639 apply.

Provisions of HOEPA apply to loans consummated after October 1, 1995. 60 Fed. Reg. 15,463–15,477 (1995). Hay's loan closed January 3, 1996.

for Movants on the issue of civil conspiracy.

### 4. TILA Violations

 Under TILA, civil actions for TILA violations brought against a creditor may be maintained against an assignee only if the violation for which such action is brought "is apparent on the face of the disclosure statement." 15 U.S.C. § 1641. Movants argue no violations are apparent on the face of Hays' disclosure statement so as assignee, Bankers Trust, at least, would have no liability for TILA violations.

 For a consumer credit transaction, the creditor must disclose a number of items, including the "amount financed," which is the amount of credit of which the consumer has actual use. 15 U.S.C. § 1638(a)(2)(A). The amount financed is computed by taking the principal amount of the loan and subtracting "any charges which are part of the finance charge, but will be paid by the consumer before or at the time of the consummation of the transaction." *Id.* at (i), (iii). Hays' disclosure statement identified the full $57,600 as amount financed, without reduction by the mortgage broker fee.[15] Thus, there is at least one error apparent on the face of the disclosure statement.[16]

Accordingly, summary judgment for Movants on assignee liability for TILA violations is inappropriate.

### 5. Hays alleged failure to reinstate

 Movants argue Hays refused to reinstate the 1996 loan and her failure to tender, as a matter of law, amounts to failure of her case. Hays responds that, when asked in interrogatories if she wished to reinstate the loan, she replied she is "willing to enter a loan agreement with Advanta Mortgage for the value actually given by the loan less deductions for statutory violations." The Court finds and concludes this is not a categorical refusal to reinstate, but a reasonably conditioned response. Accordingly, summary judgment for Movants is not appropriate on the issue of reinstatement.

### 6. Punitive damages under the WVCCPA

 As Movants argue, the Supreme Court of Appeals of West Virginia held "punitive damages are not available under the fraud or unconscionable conduct provisions of [the WVCCPA]." *Bolen*, 188 W.Va. at 692, 425 S.E.2d at 834. Plaintiff does not respond. Accordingly, the Court **GRANTS** summary judgment for Movants on this issue.[17]

## III. CONCLUSION

Accordingly, the Court **GRANTS** Plaintiff's motion to amend her Complaint and **GRANTS** in part and **DENIES** in part Defendant Bankers Trust and Advanta's motion for summary judgment.

The Clerk is directed to send a copy of this Order to counsel of record and the Clerk of the Bankruptcy Court for the District of Delaware, referencing Bankruptcy Case No. 99–453.

---

15. See discussion *supra* at n. 14. Other fees might also be includable here.

16. Plaintiff identifies numerous additional disclosure violations. Pl.'s Resp. at 10–12, 15–18.

17. Movants also argue that the Federal Alternative Mortgage Transaction Parity Act of 1982 ("FAMTPA"), 12 U.S.C. § 3801 *et seq.*, preempts state laws with regard to alternative mortgage transactions. Because the Court finds that Hays' loan is not an alternative mortgage transaction, that is, an adjustable rate loan subject to the Act, the Court **DENIES** Movants' motion for summary judgment as to FAMTPA preemption.